## IN RE DENZEL A.*
## (AC 18225)

Schaller, Sullivan and Dupont, Js.

Argued February 19—officially released June 22, 1999

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Teri E. Bayer,* for the appellant (intervening maternal grandmother).

*Michael McKenna,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Lisabeth B. Mindera,* for the minor child.

### Opinion

DUPONT, J. This appeal arises out of an action for termination of parental rights. The maternal grandmother of the minor child, Denzel A., appeals from the judgment of the trial court terminating the parental rights of Denzel's mother and father. On appeal, the grandmother claims that the trial court improperly (1) found that it was in Denzel's best interests to terminate his parents' parental rights and (2) failed to consider the grandmother's motion requesting revocation of commitment and transfer of Denzel from the guardianship and custody of the commissioner of children and families to her.

The following facts are pertinent to our resolution of this appeal. Denzel was born on March 12, 1993. On December 28, 1995, the commissioner filed a petition

claiming Denzel was a neglected or uncared for child. On May 15, 1996, the petition was granted and Denzel was committed to the care of the commissioner as an uncared for child for a period of twelve months.[1] The commitment was thereafter extended.

Denzel's mother, M, has ongoing emotional problems. She has not visited or maintained an interest in her son and she has had no contact with him since November, 1995. She alleges that Denzel's father is her own father and that he sexually abused her and fathered all four of her children. M's father has never been adjudicated the father of Denzel, his whereabouts are unknown and he has played no part in Denzel's life. Denzel has three older sisters, who reside with his and their maternal grandmother, the appellant.

On September 5, 1997, the commissioner filed a petition, pursuant to General Statutes (Rev. to 1997) § 17a-112,[2] seeking to terminate the mother's and father's parental rights to Denzel. On November 12, 1997, the trial court granted the grandmother's motion to intervene, allowing her to intervene in the dispositional phase of the proceedings but not in the adjudicatory phase. Hearings on the petition for termination were held on December 10, 1997, and February 27, 1998. Neither parent attended the hearings. On December 17, 1997, the grandmother filed a motion for revocation of commitment and transfer of guardianship and custody pursuant to General Statutes (Rev. to 1997) § 46b-129 (g).[3]

[1] The appellant grandmother was not involved in that case and no appeal was taken from that judgment.

[2] General Statutes (Rev. to 1997) § 17a-112 (a) provides in relevant part: "In respect to any child in the custody of the Commissioner of Children and Families in accordance with section 46b-129, either the commissioner, or the attorney who represented such child in a pending or prior proceeding . . . may petition the court for the termination of parental rights with reference to such child. . . ."

[3] General Statutes (Rev. to 1997) § 46b-129 (g) provides in relevant part: "Any court by which a child or youth has been committed pursuant to the

On February 27, 1998, in an oral decision,[4] the trial court found clear and convincing evidence to support the termination of parental rights of Denzel's mother and father, and appointed the commissioner as Denzel's statutory parent. Specifically, the trial court found that the commissioner established by clear and convincing evidence the adjudicatory grounds of abandonment, failure to achieve rehabilitation and no ongoing parent-child relationship with respect to both parents.[5] Furthermore, the trial court, in the dispositional phase,

provisions of this section may, upon the application of the attorney who represented such child in a prior or pending commitment proceeding . . . or other relative of such child or youth . . . or said commissioner, and while such child or youth is under the guardianship of said commissioner, upon hearing, after reasonable notice to said commissioner . . . upon finding that cause for commitment no longer exists, revoke such commitment, and thereupon such guardianship and all control of said commissioner over such child or youth shall terminate. . . ."

[4] The court ordered a transcript of the proceedings to "constitute a judgment of the court."

[5] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part: "The Superior Court, upon hearing and notice . . . may grant a [termination] petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which . . . shall not be less than one year . . . (A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the parent of a child . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. . . . (D) There is no ongoing parent-child relationship . . . or (E) the parent of a child under the age of seven years who is neglected or uncared for, has failed, is unable or is unwilling to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable period of time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child and such parent's parental rights of another child were previously terminated pursuant to a petition filed by the Commissioner of Children and Families."

found by clear and convincing evidence that it was in Denzel's best interests that parental rights be terminated. The court also ordered a case plan for permanency within ninety days. See General Statutes (Rev. to 1997) § 17a-112 (i).[6]

The grandmother does not challenge the trial court's finding that the statutory grounds for the termination of parental rights existed. Her motion to intervene in the adjudicatory phase of the hearing was denied, and this appeal does not address any of the trial court's findings with respect to that phase of the hearing. She claims, instead, that the trial court improperly determined that termination of parental rights was in Denzel's best interests.[7] She also claims that the trial court improperly failed to consider her motion for revocation of the commitment of Denzel to the commissioner, and improperly failed to transfer Denzel's guardianship and custody to her.[8]

"The standard for review on appeal [from a termination of parental rights] is whether the challenged find-

---

[6] General Statutes (Rev. to 1997) § 17a-112 (i) provides in relevant part: "In the case where termination of parental rights is granted, the guardian of the person or statutory parent shall report to the court within ninety days of the date judgment is entered on a case plan, as defined by the federal Adoption Assistance and Child Welfare Act of 1980, for the child. . . ."

[7] The commissioner argued for the termination of parental rights and for the appointment of the commissioner as statutory parent. The appellant argued that it was not in the best interests of the child to terminate parental rights, and the child's attorney argued that the best interests of the child required placement with the grandmother. The child's attorney did not argue the best interests of the child as they related to the termination of parental rights.

[8] In view of our decision as to the first issue raised, it is not necessary to discuss this second claim. Furthermore, the motion was never decided, and the transcript indicates that the appellant agreed that it would not be addressed "at this time." The trial court took no action because it determined that the motion was not timely filed and because the motion was inappropriate in a dispositional hearing on a termination of parental rights. The appellant claims that the court's inaction was plain error. The court's action in this situation was not plain error. See *State* v. *Webb*, 238 Conn. 389, 457, 680 A.2d 147 (1996).

ings are clearly erroneous. *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)]; *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991) . . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [181 Conn. 217, 222, 435 A.2d 24 (1980)]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) *In re Danuael D.*, 51 Conn. App. 829, 836–37, 724 A.2d 546 (1999); *In re Roshawn R.*, 51 Conn. App. 44, 51–52, 720 A.2d 1112 (1998). It is

thus possible for a court to find that a statutory ground for termination of parental rights exists but that it is not in the best interests of the child to terminate the parental relationship, although removal from the custody of the parent may be justified. *In re Baby Girl B.*, 224 Conn. 263, 279–80, 618 A.2d 1 (1992).

In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes (Rev. to 1997) § 17a-112 (e).[9]

Here, the grandmother claims that even though statutory grounds exist for termination of parental rights, it is not in Denzel's best interests that those rights be terminated. The grandmother claims that Denzel should

---

[9] General Statutes (Rev. to 1997) § 17a-112 (e) provides in relevant part: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust his circumstances, conduct, or conditions to make it in the best interest of the child to return him to his home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

remain committed to the custody of the commissioner in order to allow the grandmother to establish a relationship with him and eventually to assume guardianship. In essence, the grandmother argues for time so that she could be considered in the future as a resource for Denzel. She claims that it is in Denzel's best interests to be placed eventually with her and his biological family rather than to terminate parental rights, which would allow him to be freed for adoption by strangers.

This case requires a resolution of the parameters of the role of an intervening grandparent in the dispositional phase of a termination of parental rights action. During the dispositional phase, the court must consider all of the facts that are relevant to the welfare of the child. "Termination of parental rights does not follow automatically from parental conduct justifying the removal of custody." *In re Baby Girl B.*, supra, 224 Conn. 279. After the statutory grounds for termination are proved by clear and convincing evidence in an adjudicatory phase, the question then to be decided in a dispositional phase is whether it is in the best interests of the child to sever the parent-child relationship. That is different from the question of who should have custody of the child if termination of parental rights is determined to be in the best interests of the child. See Practice Book § 33-5.[10]

The only reason in this case not to sever the parent-child relationship would be if the severance would ensure that Denzel could reside with his grandmother. *Where* he should reside and *with whom*, however, are not questions that relate to whether it is in his best interests to terminate his relationship with his parents.

[10] Practice Book § 33-5 provides in relevant part: "The judicial authority may admit into evidence any testimony relevant and material to the issue of the disposition, including events occurring through the close of the evidentiary hearing, but no disposition may be made by the judicial authority until any mandated social study has been submitted to the court. . . ."

"It bears emphasis that a judicial termination of parental rights may not be premised on a determination that it would be in the child's best interests to terminate the parent's rights in order to substitute another, more suitable set of adoptive parents." *In re Baby Girl B.*, supra, 224 Conn. 280. The purpose of the intervention of a grandparent in a termination of parental rights case does not include the right to effect an adoption or to obtain custody for the grandparent but is solely for the purpose of affecting the termination itself. *In re Ryan V.*, 46 Conn. App. 69, 72, 698 A.2d 371 (1997).

The appellant grandmother in this case may well be the appropriate custodian or adoptive parent. Our review of the transcript reveals that as of the date of the dispositional hearing, she was the only prospective adoptive parent. Her ability to accomplish that remains for another day. See id., 73–74.

In this case, the grandmother sought to establish her own suitability as a custodian or adoptive parent, rather than to establish whether termination of parental rights was in the best interests of Denzel. To delay the termination of parental rights would delay the finding of a permanent home for Denzel, whether that home should be with his grandmother, which, as of the hearing date, seemed appropriate, or with some other person or persons.

The trial court discussed the appropriate criteria under § 17a-112 (e) and we conclude that it acted properly in terminating parental rights.

The judgment is affirmed.

In this opinion the other judges concurred.