[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 27, 2000, the court, (Swienton, J.) granted a petition filed by the attorney for the minor child, Rayshawn P., to terminate the parental rights of the biological mother, Nola P., who has filed an application for a waiver of fees, costs and security to appeal that judgment. The attorney for the minor child and the appointed statutory parent, Lutheran Social Services of New England, object.[1]
There is no dispute as to the indigence of the mother, but rather objection on the basis that the appeal is frivolous. Practice Book Section 63-6 requires that the application for a fee waiver disclose "the grounds upon which the applicant proposes to appeal . . ." This facilitates the court's determination of whether the proposed appeal would be non-frivolous. A party is not entitled to a waiver of fees and costs in order to pursue a frivolous appeal. Martinelli v. Martinelli,
Superior Court Judicial District of Waterbury, No. FA92-112322,18 Conn. L. Rptr. 63 (October 25, 1996); Hackett v. Commission onHuman Rights Opportunities, Superior Court, Judicial District of Waterbury, No. CV94-0122312, 17 Conn. L. Rptr. 187 (July 19, 1996);In re Sheena and Juan I., No. F04-96-003792A and No. F04-003794A, Superior Court, Child Protection Session at Middletown, ___ Conn. L. Rptr. ___ (September 7, 2000).
Nola P. cites three specific grounds for appeal in her motion: (1) the trial judge erred in not recusing herself; (2) the trial court erred in allowing the proposed adoptive parents' interaction with the child to be evaluated by a court appointed psychologist; and (3) the trial court based its termination of parental rights on insufficient evidence. After reviewing the contents of the court file, the exhibits and the detailed memorandum in support of the trial court's decision, the proposed appeal is found to be entirely without merit, and, consequently, the request for CT Page 1646 a waiver of fees, costs and security is denied.[2]
With respect to the first ground for appeal, failure of the trial judge to recuse herself, the respondent mother never filed a written motion for disqualification in compliance with Practice Book Section 1-23, which is applicable to juvenile matters pursuant to Section 1-1 (b). Appellate courts generally will not consider the issue of alleged judicial bias where the party failed to make the proper motion for disqualification at trial." "A litigant must raise the question of disqualification in a timely and appropriate manner; Pavel v. Pavel, 4 Conn. App. 575, 576 n. 2, 495 A.2d 516 (1985); Jazlowiecki v. Cyr, 4 Conn. App. 76, 78,492 A.2d 516 (1985); Szypula v. Szypula, 2 Conn. App. 650, 654, 482 A.2d 85
(1984); or the claim will be deemed to have been waived. Verissimo v.Verissimo, 3 Conn. App. 222, 224, 486 A.2d 85 (1985).' LogicalCommunications, Inc. v. Morgan Management Corporation, 4 Conn. App. 669,670, 496 A.2d 239 (1985)." Tatro v. Tatro, 24 Conn. App. 180, 188,587 A.2d 184 (1991). Just prior to the commencement of trial, the respondent made an oral motion to have the trial judge recuse herself because the judge's rulings on pre-trial motions exhibited bias, prejudice or predisposition toward a certain outcome. Alleging bias on the basis of adverse rulings is wholly without merit. Alleged bias and prejudice, to be disqualifying, must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case. State v. Dumas,54 Conn. App. 780, 792, 739 A.2d 1251 (1999).
The second ground alleged as error is that the court's factual findings do not support the termination of the mother's parental rights. In a comprehensive memorandum of decision, he court found that two
grounds for termination of parental rights, failure to achieve rehabilitation and no ongoing parent-child relationship, had been proven by clear and convincing evidence. Furthermore, the trial court, in the dispositional phase, found by clear and convincing evidence that it was in the child's best interests that parental rights be terminated.[3]
This was a vigorously contested, lengthy trial that included the testimony of an expert who recommended termination. "The court, as the trier of fact, is free to accept or reject, in whole or in part, the testimony offered by either party." In re Cesar G., 56 Conn. App. 289,297, 742 A.2d 428 (2000). "The testimony of professionals is given great weight in parental termination proceedings." In re Michael M.,29 Conn. App. 112, 127 n. 12, 614 A.2d 832 (1992). On appeal, appellate courts do not retry the facts or pass on the credibility of witnesses, and in termination proceedings, they will not dispute a court's findings absent a clear abuse of discretion. "The standard for review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous." In re Luis C., 210 Conn. 157, 166, 554 A.2d 722
CT Page 1647 (1989); In re Christina V., 38 Conn. App. 214, 223, 660 A.2d 863 (1995). On review, every reasonable presumption is made in favor of the trial court's ruling. In re Denzel A., 53 Conn. App. 827, 832, 733 A.2d 298
(1999).
The final ground for appeal is that the court erred in ordering an evaluation by a court-appointed expert that included an order that interactions between Sue Ellen and Michael C., proposed adoptive parents, and the child be observed. This evaluation was ordered months before the child's petition for termination of parental rights was filed on June 7, 2000, at a time when counsel were disputing the efforts of the department to change its permanency plan from termination of parental rights and adoption to transfer of guardianship to the maternal great aunt. The department's written motion for an evaluation indicated that it "was evaluating various placement options." Consequently, the child's attorney moved that all these "options" be explored in the evaluation. While mother had no objection to evaluating the great aunt, who only met Rayshawn in the fall of 1999, she opposed — in an untimely manner — similar evaluations of Rayshawn's foster parents, who had cared for him since he was five days old, and proposed adoptive parents whom the department had investigated and licensed as a potential pre-adoptive home for Rayshawn in May of 1999. This couple were neighbors of the foster parents and had provided day care and respite care for Rayshawn. When the foster parents indicated no interest in adopting Rayshawn, this couple came forward. Respondent mother calls this inclusion a violation of statutory and constitutional law, but provides no legal analysis or supporting authorities. After the court ordered and scheduled the evaluations, mother filed a written objection which she subsequently withdrew in court on April 5, 2000 after learning that the evaluations had already been conducted. On April 20, she inappropriately moved to strike and redact those portions of the psychological evaluation that referred to the C.'s Motions to strike are addressed to pleadings, and a request for redaction prior to an evaluation being offered into evidence is premature. This motion was denied.
Relatives and other persons proposed as permanent caretakers, especially persons with whom children may have formed attachments, often are included in child protection evaluations and this court knows of no statutory or constitutional prohibitions to the practice.[4] Such evaluations often occur early in the initial stages of neglect and uncared for proceedings, and they may later provide the kind of information the court needs to make its best interest determination in the dispositional phase of a termination trial.[5] The factors to be considered in deciding whether it would be in a child's best interest to terminate parental rights include an assessment of the child's relationship with not only the parents, but foster and potential adoptive CT Page 1648 parents. In re Juvenile Appeal (Anonymous), 177 Conn. 648, 673-674,420 A.2d 875 (1979); In re Kezia M., 33 Conn. App. 12, 22, 632 A.2d 1122
(1993).
Of course, the trier must be sure to proceed appropriately, first establishing by clear and convincing evidence that grounds for termination exist before commenting on the relationship to other custodians or proposed adoptive parents, which are not the only dispositive factors. In its decision, the trial court briefly comments on evidence received as to the C.'s, and only in the dispositional section, after thoroughly considering the adjudicatory evidence and concluding that two grounds for termination of mother's parental rights exist. A termination proceeding does not involve a determination of where and with whom the child should reside or who should adopt the child. The accomplishment of that task is for another day. In re Denzel A., supra,53 Conn. App. 835.
The court concludes the proposed appeal would be wholly frivolous and only serve to delay permanency for Rayshawn, a child with specialized needs who has been in foster care for more than three years. Always," "the welfare of the child is the paramount consideration. (Internal quotations marks omitted.) McGaffin v. Roberts, 193 Conn. 393, 403,479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S.Ct. 1747,84 L.Ed.2d 813 (1985)." In re Jonathan M., 255 Conn. 208, 241 ___ A.2d ___ (2001).
For the foregoing reasons, the motion is denied.
KELLER, J.