[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On April 23, 2001, the petitioner filed petitions pursuant to C.G.S. § 17a-112, et seq., to terminate the parental rights of Denise B. to her children Kayla P., Jonathan P. and Brittany P. Petitioner also sought to terminate the parental rights of respondent father of Brittany P., Joseph B. The putative father of Kayla P. and Jonathan P., Robert Z., is deceased. Respondent father, Joseph B., who is currently sewing a lengthy sentence for three counts of child sexual molestation and one count of sexual battery, consented to termination of his parental rights with regard to Brittany. Respondent mother has not appeared in connection with this petition.
On June 28, 2001, the Superior Court for Juvenile Matters at Willimantic (Mack, J.) found that respondent mother had defaulted in this matter, made adjudication findings on the allegations contained in the petition, and entered orders upholding the termination petition on the grounds of abandonment [17 C.G.S. § 112(j)(A)] and that there was no ongoing parent-child relationship with respect to the mother that ordinarily develops as a result of a parent having met on a continuing day-to-day basis the physical, emotional, moral or educational needs of the children and to allow further time for the reestablishment of the parent child relationship would be detrimental to the best interest of the children. [17 C.G.S. § 112(D)]. On the same date, the court accepted respondent father, Joseph B.'s, consent to termination of his parental rights to Brittany. Thereafter the matter was referred to the Regional Child Protection Session at the Middlesex J.D. for disposition. The court heard evidence with regard to disposition on November 20, 2001.[1]
Neither respondent mother nor respondent father Joseph B. appeared. For the reasons stated below, the court finds that termination of parental CT Page 3713 rights of Denise B. and Joseph B. is in the best interest of the children Kayla, Jonathan and Brittany.
 DISPOSITION
As to the dispositional phase of this hearing on the petition for termination of parental rights, the court has considered the evidence and testimony related to circumstances and events up to and including November 20, 2001, the date upon which the evidence in this matter was completed.[2] The Court had for its consideration the testimony of the DCF social worker and the Social Study, Petitioner's Exhibit 1.
"The termination of parental rights is defined as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his [or her] parent. . . . [As such, it] is a most serious and sensitive judicial action." (Citation omitted; internal quotation marks omitted.) In re Jonathan M.,255 Conn. 208, 231, 764 A.2d 739 (2001); In re Bruce R., 234 Conn. 194,200 (1995). During the dispositional phase, the trial court must determine whether termination is in the best interests of the child.' Inre Eden F., 250 Conn. 674, 688-89, 741 A.2d 873 (1999)." In re QuanitraM., 60 Conn. App. 96, 102-03, ___ A.2d ___ (2000). "in arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in General Statutes [17a-112 (k)]." Inre Jonathan C., 63 Conn. App. 516, 528 (quoting In re Denzel A.,53 Conn. App. 827, 833, 733 A.2d 298 (1999)). "The seven factors . . . serve simply as guidelines to the court and are not statutory prerequisites that need to be proven before termination can be ordered."In re Ouanitra M., 60 Conn. App. at 104. The court considers each of them in determining whether to terminate parental rights under this section. The court makes the following seven written findings as to respondent mother[3]:
(1) As to the timeliness, nature and extent of services offered, provided and made available to the respondent mother and the children by an agency to facilitate the reunion of the children with respondent, the court finds that in addition to case management and referral services through DCF, respondent mother was provided with services through the young parents program, parent aide services, Intensive Family Preservation Services, Birth to Three Program, the Department of Mental Retardation, Day Kimball Hospital Mental Health Services and the Thompson Ecumenical Empowerment Group. Ex. 1 at p. 22. These services were offered based on mother's young age at the time she gave birth to her children, her involvement with violent and abusive men and her mental health issues. CT Page 3714
(2) As to whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended, the court finds by clear and convincing evidence that respondent mother has demonstrated that she is unable or unwilling to benefit from reunification efforts., § 17a-112 (c)(1). Moreover, on May 31, 2000, the court (Mack, J.) found that further efforts to reunify Kayla, Jonathan and Brittany with their mother were no longer appropriate. The action of DCF to institute termination proceedings is consistent with the federal law designed to eliminate foster care drift and secure permanent placement for children in foster care.
(3) As to the extent to which all parties have fulfilled their obligations under the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, the court finds that due to the circumstances of this case, no specific steps were ordered. Ex. 1 at p. 23. DCF has fulfilled any obligations it had in order to facilitate reunification of the family.
(4) As to the feelings and emotional ties of the children with respect to the children's parents, any guardian of the children and any person who has exercised physical care, custody or control of the children for at least one year and with whom the children have developed significant emotional ties, the court finds by clear and convincing evidence that Kayla, Jonathan and Brittany do not have any bond or emotional ties with respondent mother. Respondent mother moved them frequently as she moved from one abusive relationship to another and finally abandoned them in December, 1997 leaving them in a horribly abusive home when they were 5, 3 and 2 years of age. They have not had contact with her since. They do not appear to have any positive memories of respondent mother and would not recognize her as a parent in the sense that they would not seek comfort from her or go to her to have their needs met. Brittany does not have any emotional ties or bond with her father. The father of Kayla and Jonathan is deceased.
The children are doing well in foster care. Kayla and Brittany are placed with one foster family and Jonathan, due to severe special needs, is placed with another. The girls have bonded well in their current foster home where they have been since 1999. Although Jonathan has significant behavioral issues, he too has made progress in his current foster home and has significant ties and an emotional bond with that family. Their foster families are providing the physical, emotional, moral and educational support these children need.
The Court finds that the children do have ties and an emotional bond to their maternal Aunt and Uncle, the Cs, with whom they have had regular contact.[4]
CT Page 3715
(5) As to the ages of the children, the court finds that Kayla is now 9 years of age, Jonathan is 8, and Brittany is 6. The Court further finds, as shown by clear and convincing evidence, that these children require stability of placement and continuity of care and that the children's attorney recommends termination.[5]
(6) As to the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; the court finds by clear and convincing evidence that respondent mother has made no effort to appear in this matter or to demonstrate any acceptable parental standards. On January 3, 2000, respondent mother left a notarized letter for the court stating that she was too mentally ill to care for her children and wanted them to be raised by the Cs. Ex. 1 at 7. She has had no contact with the children since 1998. She also has not maintained regular contact or communication with the guardian or custodian of the children to inquire as to their well being. Giving her additional time would not likely bring her performance, as a parent, within acceptable standards sufficient to make it in the best interests of the children to be reunited. In re Luis C.,210 Conn. 157 (1989); In re Juvenile Appeal, 183 Conn. 11, 15 (1981).
(7) As to the extent to which a parent has been prevented from maintaining a meaningful relationship with the children by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent, the court finds by clear and convincing evidence that no unreasonable conduct by the child protection agency, foster parents or third parties is noted.
Further, there was no evidence that economic factors may have prevented regular, continuing contact with the children.
With respect to the best interests of the children contemplated by C.G.S. § 17a-112 (j)(2), by clear and convincing evidence, and based upon all of the foregoing, the court finds that termination of the parental rights of Denise B. is in the best interest of the children Kayla, Jonathan and Brittany. Mother subjected these children to abusive, violent men during their first few years of life. She then voluntarily abandoned the children, giving custody of them to individuals CT Page 3716 who subjected them to severe physical and emotional abuse. She has had no role in their lives since then.
The court also finds that termination of the parental rights of respondent father, Joseph B., to Brittany, based on father's consent, is in the best interest of the child. Respondent father of Brittany is currently serving a 15 year sentence on charges of child molestation and sexual assault. He subjected these children to physical and sexual abuse. Ex. I at 9-14. He has had no role in Brittany's life for many years, having separated from respondent mother when Brittany was approximately 2. She would not recognize him as a parent.
These findings are made after considering the totality of circumstances including the children's sense of time and the children's need for a secure and permanent environment.
It is accordingly, ORDERED that the parental rights of Denise B. are hereby terminated as to the children Kayla P., Jonathan P. and Brittany P. and the parental rights of Joseph B. are hereby terminated as to Brittany P. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. As stated in court on March 18, 2002 and by agreement of the Petitioner and all parties present, the court will retain jurisdiction to consider the pending motion for transfer of guardianship.
A permanency plan shall be submitted within 30 days of this judgment, and that such further reports shall be timely presented to the court as required by law.
Judgment may enter accordingly.
It is so ordered this 19th day of March, 2002.
Jongbloed, J.