******************************************************************

The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

# IN RE KAMERON N.*
## (AC 44086)

Lavine, Moll and Cradle, Js.**

*Syllabus*

The respondent mother appealed to this court from the judgment of the trial court terminating her parental rights with respect to her minor child, K, who had previously been adjudicated neglected. K was eligible for enrollment in the Rosebud Sioux Tribe on the basis of his father's tribal membership. The petitioner, the Commissioner of Children and Families, and the Department of Children and Families, sent multiple letters to the tribe pursuant to the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) regarding K's involvement with the department. These letters included, inter alia, one sent by registered mail, return receipt requested, informing the tribe that a trial on the termination of parental rights was scheduled, with the dates, times and location of the trial. A social worker representing the tribe signed for that letter. The tribe sent multiple letters to the petitioner indicating, inter alia, that K qualified for enrollment, and it exercised its statutory (25 U.S.C. § 1911 (c)) right to intervene in the termination trial, but it did not appear. On appeal, the mother claimed that the tribe did not receive proper notice of the termination proceedings as required by federal law (25 U.S.C. § 1912 (a)) and that the court erred in denying her motion to open the evidence and in finding that termination was in K's best interest. *Held*:

1. The respondent mother's claims that the tribe received inadequate notice of the termination proceedings were unavailing: although the petitioner's letters to the tribe did not strictly follow guidelines for implementing the Indian Child Welfare Act that the mother referenced in her challenge to the notice, those guidelines were not mandatory and did not expand the notice requirements set forth in the plain language of the act; moreover, although the letter sent by registered mail informing the tribe of the details of the termination trial did not advise the tribe of its right to intervene, the tribe previously had been advised of and acknowledged this right, thus, the notice complied with the requirements of 25 U.S.C. § 1912 (a).

2. The trial court did not abuse its discretion in denying the respondent mother's motion to open the evidence for the purpose of introducing new evidence regarding the placement of K; contrary to the mother's assertion, the court did not rely on the willingness of K's foster family to adopt him in determining that termination of her parental rights was in K's best interest, thus, the mother's purported new evidence was irrelevant to the issues before the court.

3. The trial court's determination that termination of the respondent mother's parental rights was in the child's best interest was not clearly erroneous; the court was entitled to determine, based on the evidence, that the benefit of K's bond with his mother and the potential loss he would suffer from its removal were outweighed by his need for stability and consistency, which she could not provide.

Argued November 10, 2020—officially released February 16, 2021***

## Procedural History

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Middlesex, Juvenile Matters at Middletown, where the Rosebud Sioux Tribe intervened; thereafter, the matter was tried to the court, *Woods, J.*; subsequently, the court denied the respondent mother's motion to open the evidence; judgment terminating the respondents' parental rights, from which the respondent mother appealed to this court.

*Affirmed.*

*Karen Oliver Damboise*, assigned counsel, for the appellant (respondent mother).

*Carolyn A. Signorelli*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Evan O'Roark*, assistant attorney general, for the appellee (petitioner).

*Opinion*

CRADLE, J. The respondent mother, Brooke C., appeals from the judgment of the trial court terminating her parental rights with respect to her minor child, Kameron N.[1] On appeal, she claims that (1) the Rosebud Sioux Tribe (tribe) did not receive proper notice, pursuant to the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901 et seq., of the termination of parental rights proceedings involving the child, who is enrollable as a member of the tribe,[2] (2) the trial court erred in denying her motion to open the evidence "for the purpose of introducing new evidence, which was discovered after the close of evidence, regarding placement of the child," and (3) the trial court erred in finding that termination was in the child's best interest. We affirm the judgment of the trial court.

The following procedural history, set forth by the trial court, is relevant to the respondent's claims. The child was born to the respondent and David N. (collectively, parents) on December 19, 2009. David N. and his mother, the child's paternal grandmother, are natives of the tribe. The Department of Children and Families (department) has been involved with this family since 2011, resulting in three substantiated allegations of neglect arising from issues of ongoing substance abuse, intimate partner violence, and inadequate supervision of the child. "On August 5, 2016, [the petitioner, the Commissioner of Children and Families] filed a neglect petition on behalf of [the child]. On November 10, 2016, [the child] was adjudicated neglected and placed under protective supervision. While [the child] was under protective supervision and under [the respondent's] care, [the respondent] continued to struggle with maintaining sobriety, which impacted her ability to properly parent [the child]. On May 19, 2017, [the petitioner] filed an [order for temporary custody] on behalf of [the child], which was sustained on May 26, 2017. On May 19, 2017, [the child] was placed in a nonrelative foster home where he continues to reside at this time. On June 15, 2017, [the child] was committed to [the care and custody of the petitioner]. On April 12, 2018, a permanency plan for [termination of parental rights] and adoption was approved by the court. A [termination] trial on this matter commenced on April 22, 2019, with subsequent trial dates of April 25, May 1, May 2, May 21, and June 17 of 2019."

On January 31, 2020, the trial court issued a memorandum of decision terminating the parental rights of the parents. The court found that the petitioner had made the requisite efforts under ICWA to prevent the breakup of the family by providing remedial services and rehabilitative programs to both parents, but those efforts were unsuccessful. The court determined that the child had previously been adjudicated neglected and that neither parent had achieved a sufficient degree of personal

rehabilitation within the meaning of General Statutes § 17a-112 (j) (3) (B) (i). The court further concluded that terminating their parental rights was in the child's best interest. This appeal followed.

We begin by noting that "Congress enacted ICWA in 1978 to address the [f]ederal, [s]tate, and private agency policies and practices that resulted in the wholesale separation of Indian children from their families. . . . Congress found that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions . . . . Although the crisis flowed from multiple causes, Congress found that non-Tribal public and private agencies had played a significant role, and that [s]tate agencies and courts had often failed to recognize the essential Tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families. . . . To address this failure, ICWA establishes minimum [f]ederal standards for the removal of Indian children from their families and the placement of these children in foster or adoptive homes, and confirms Tribal jurisdiction over [child custody] proceedings involving Indian children." (Footnotes omitted; internal quotation marks omitted.) United States Department of the Interior, Office of the Assistant Secretary—Indian Affairs, Bureau of Indian Affairs, "Guidelines for Implementing the Indian Child Welfare Act," (2016) (Guidelines), p. 5, available at bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf (last visited February 10, 2021). With the foregoing principles in mind, we turn to the respondent's claims on appeal.

I

The respondent first challenges the adequacy of the notice of the termination proceedings afforded to the tribe pursuant to ICWA.[3] The following additional facts, which are undisputed, are relevant to the respondent's claim. At trial, the petitioner introduced into evidence the department's correspondence with the tribe pertaining to the child protection proceedings involving the child. The record reflects that, by way of a letter dated July 14, 2017, the department notified the tribe that a neglect petition had been filed on behalf of the child on August 9, 2016. On May 22, 2018, the department sent a letter to the tribe informing it that a permanency plan recommending the termination of parental rights and adoption, which was attached to the letter, had been filed on behalf of the child on February 22, 2018. On June 21, 2018, the department sent another letter to the tribe, referencing the prior neglect petition and a previous order for temporary custody and neglect adjudication, and informing the tribe that the permanency plan recommending termination had been

granted by the court on April 12, 2018. All three of these letters were sent pursuant to ICWA, indicated that the department had information to believe that the child might be a member of the tribe, and advised the tribe of its right to intervene in the proceedings. The respondent does not claim that the tribe did not receive these notices.

On June 28, 2018, the tribe responded to the department, indicating that the child qualified for enrollment in the tribe based on enrollment of the child's father. On July 6, 2018, the tribe sent another letter to the department indicating that it had determined that the child met the definition of "Indian Child" pursuant to 25 U.S.C. § 1903 (4). In that letter, the tribe stated: "If this is an involuntary child custody proceeding, we intend to intervene in the above named matter as a legal party. Send a copy of petition with names and addresses of all parties."

On September 19, 2018, the department sent a letter to the tribe notifying it of a "court date scheduled on behalf of [the child] on [November 13, 2018] at 9:30 a.m." The letter contained the address of the court, but did not indicate the purpose of the "court date."

On January 17, 2019,[4] the department sent a letter to the tribe informing it of a hearing date of April 9, 2019, to address pretrial motions, and notifying the tribe that the termination of parental rights trial was scheduled for April 22, April 25, and April 29, 2019. This letter included the times of the trial on each date and the address of the court. It was sent by registered mail with return receipt requested and was signed for by Shirley Bad Wound, a social worker representing the tribe.

On January 28, 2019, the tribe filed with the trial court, inter alia, a "Notice of Intervention by the Rosebud Sioux Tribe" stating that it was "invok[ing] its rights to intervene in this child custody proceeding pursuant to 25 U.S.C. § 1911 (c) . . . ." Despite exercising its right to intervene, the tribe took no further action, and did not appear at the termination trial.

On March 27, 2019, David Mantell, a clinical and forensic psychologist who was asked by the department to review this matter, called Bad Wound. Bad Wound acknowledged receipt of the documents sent by the department but told Mantell that she knew very little about the proceedings involving the child. After Mantell summarized the proceedings for Bad Wound, she indicated that the tribe's plan at that time was to enroll him as a tribal member. Despite exercising its right to intervene, the tribe took no further action and did not appear at the termination trial.

The trial court found that the child was a member of the tribe, and, accordingly applied the substantive law of ICWA in weighing the evidence presented at trial. The trial court also found that "notice of the court

hearing dates were sent to the Rosebud Sioux tribe by the [department] . . . [but] [n]o representative of the tribe ever appeared in court."

The respondent now challenges the adequacy of the notice afforded to the tribe of the termination proceedings. The notice requirements of ICWA are set forth in 25 U.S.C. § 1912 (a), which provides in relevant part: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . ." 25 U.S.C. § 1912 (a) (2018).

The respondent's challenge to the adequacy of the notice afforded to the tribe is twofold.[5] First, the respondent relies on the Guidelines in arguing: "The department should have sent a letter, via certified or registered mail, on or about July 5, 2018, informing the tribe that a termination of parental rights petition had been filed, include a copy of the [termination] petition, as well as the date, time and location of the [termination] plea; and contain[ing] the name, birthdate and birthplace of the Indian child [and] his tribal affiliation; all known parents; the parents' birthdates, birthplace[s] and tribal enrollment information; the name, birthdates, birthplaces and tribal information of maternal and paternal grandparents; the name of each Indian tribe in which the child is a member or eligible for membership; the petitioner's name; a statement of the right of the tribe to intervene; the right to counsel; the right to request up to a twenty day extension; [the] right to transfer the proceeding to tribal court; [the] address and telephone contact information of the court and potential legal consequences of the proceedings; and confidentiality. 25 C.F.R. § 23.111 (d); [Guidelines], pp. 32–33."

As the respondent aptly notes, however, the Guidelines are not mandatory or binding. The Guidelines state in relevant part: "While not imposing binding requirements, these guidelines provide a reference and resource for all parties involved in child custody proceedings involving Indian children. These guidelines explain the statute and regulations and also provide examples of best practices for the implementation of the statute, with the goal of encouraging greater uniformity in the application of ICWA. These guidelines replace the 1979 and 2015 versions of the [Department of the Interior's] guidelines." Guidelines, supra, p. 4. Therefore, although instructive, these guidelines are not mandatory and do not expand the notice requirements set forth in ICWA, but, rather, simply guide practitioners on how best to comply with those requirements. Thus, although the notices sent by the department in this case

did not contain all of the information recommended in the guidelines, the omission of that information did not render the notice to the tribe deficient under 25 U.S.C. § 1912 (a).

The respondent also argues that the notice of the termination proceedings was deficient because it was not sent to the tribe by registered mail with return receipt requested as required by the plain language of 25 U.S.C. § 1912 (a). As noted herein, the department sent notice to the tribe on January 17, 2019, of the dates of the hearing on pretrial motions for the termination trial and the dates of the termination trial itself by registered mail, which was signed for by Bad Wound. Although that particular correspondence did not advise the tribe of its right to intervene, the tribe had already acknowledged that it had received that advisement from the department and had already stated its intention to intervene. It was therefore unnecessary for the department to again advise the tribe of its right to intervene. In other words, because the tribe had already acknowledged its right to intervene in the termination proceedings, and stated its intention to do so, in its July 6, 2018 correspondence to the department, the January 17, 2019 notice to the tribe, which informed the tribe of the termination trial dates, and was sent by registered mail, adequately complied with the requirements of 25 U.S.C. § 1912 (a).[6]

On the basis of the foregoing, we conclude that the respondent's challenges to the adequacy of the notice afforded to the tribe of the termination proceedings on the grounds that it did not comply with the Guidelines and that it was not sent by registered mail are unavailing.

II

The respondent next claims that the trial court erred in denying her motion to open the evidence "for the purpose of introducing new evidence, which was discovered after the close of evidence, regarding placement of the child." We disagree.

"We review a trial court's decision to reopen evidence under the abuse of discretion standard. In any ordinary situation if a trial court feels that, by inadvertence or mistake, there has been a failure to introduce available evidence upon a material issue in the case of such a nature that in its absence there is a serious danger of a miscarriage of justice, it may properly permit that evidence to be introduced at any time before the case has been decided. . . . Whether or not a trial court will permit further evidence to be offered after the close of testimony in a case is a matter resting in the sound discretion of the court. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only

[when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *Antonucci* v. *Antonucci*, 164 Conn. App. 95, 123, 138 A.3d 297 (2016).

The respondent moved to open the evidence on the basis of "information obtained at an [administrative case review] concerning the placement of the subject child."[7] Her motion does not reveal the substance or source of this evidence. In her brief to this court, the respondent hints that the purportedly new evidence that she sought to introduce would show that the child's foster family was no longer "an adoptive resource" or "long-term resource" for the child. She argues: "Clearly, the trial court was anticipating the foster parents to adopt [the child] and relied upon that evidence in making its decision to terminate."

First, we disagree with the respondent's assertion that the trial court relied on the foster family's willingness to adopt when it determined that termination of her parental rights was in the child's best interest. In concluding that termination was in the best interest of the child, the court reasoned: "The court has . . . balanced the child's need for stability and permanency against the distant and uncertain benefit of maintaining a connection with [the parents]. The court has noted throughout this decision that the parents have not demonstrated a willingness or ability to provide consistent, competent, safe, and nurturing parenting to their child. The parents have never successfully cared for or supported [the child], or met his needs on a consistent basis. The parents have not successfully taken advantage of available services in order to improve their circumstances so they can assume a responsible role in [the child's] life. They have been unavailable for services due to lack of interest and concern for [the child]. Further, the father has been incarcerated. The parents have not been able to put the child's interests ahead of their own interests.

"The child needs a permanent and stable living environment in order to grow and develop in a healthy manner. There is no reasonable possibility that the . . . parents will be able to serve a meaningful role as a parent within a reasonable period of time. The child seeks his foster parents out for daily comfort and support. The court finds that the child is bonded to his foster family and enjoys a significant degree of mental and emotional stability in their care.

"The best interest of the child will be served by terminating the parental rights of the [parents] so that the child can be provided with the love, care, permanency, and the stability that he requires."

Although the court referred to the child's foster family, it is clear that the court's decision was based on the parents' demonstrated inability to meet the child's

needs. Moreover, because the questions of where the child should reside and with whom are not questions that relate to whether it is in the child's best interest to terminate his relationship with his parents; see *In re Denzel A.*, 53 Conn. App. 827, 834, 733 A.2d 298 (1999); the respondent's purported new evidence was irrelevant to the issues before the trial court. We therefore conclude that the trial court did not abuse its discretion in denying the respondent's motion to open the evidence.

### III

Finally, the respondent claims that the court erred in concluding that termination was in the child's best interest. Specifically, the respondent also argues that the court's finding that the benefit to the child of maintaining a connection with her was "distant and uncertain" was clearly erroneous and not supported by the evidence."[8] We are not persuaded.

"A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 200 Conn. App. 229, 246, 240 A.3d 688 (2020).

The respondent contends that the court erred in characterizing the benefit of the child maintaining a connection with her as "distant and uncertain." She argues that the court's finding was inconsistent with Mantell's testimony that the child had a close bond with her and that the child's loss of that bond would be a significant loss to him. The court's characterization of the benefit to the child of his bond with the respondent is not inconsistent with Mantell's testimony. The court so characterized the respondent's relationship with the child relative to his need for stability and consistency, which the respondent has been unwilling or unable to provide. Thus, while the child's loss of his relationship with the respondent might, as Mantell testified, be a significant loss, the court determined that the risk of that loss was outweighed by the needs of the child. It is within the court's discretion to credit all, part, or none of the testimony elicited at trial, to weigh the evidence presented, and to determine the effect to be given the evidence. See *In re Gabriella A.*, 319 Conn. 775, 790, 127 A.3d 948 (2015). The court here determined, on the basis of the respondent's history as a mother, that the risk of the potential loss of the child's relationship with her was outweighed by his need for consistency and stability. The court emphasized the repeated efforts of the department to rehabilitate the respondent and reunify her with the child and the respondent's consistent inability or unwillingness to cooperate with the department's efforts. There is ample

evidence of the respondent's shortcomings against which the court was entitled to weigh the benefit of the child's relationship with her. The court did not err in engaging in that thoughtful analysis.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** The listing of judges reflects their seniority status on this court as of the date of oral argument.

*** February 16, 2021, the date this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The parental rights of the child's father also were terminated. He has challenged the trial court's judgment in a separate appeal. See *In re Kameron N.*, 202 Conn. App.    ,    A.3d    (2021). Therefore, any reference to the respondent is to the mother.

[2] In the father's appeal, he also challenged the adequacy of the notice afforded to the tribe. In that appeal, the attorney for the child filed a letter with this court, pursuant to Practice Book §§ 67-13 and 79a-6 (c), adopting the brief of the petitioner.

[3] It is well settled that such a claim challenging compliance under ICWA in an involuntary proceeding such as the termination of parental rights may properly be raised for the first time on appeal. See *In re Marinna J.*, 90 Cal. App. 4th 731, 739, 109 Cal. Rptr. 2d 267 (2001). Additionally, ICWA specifically confers standing on a parent to petition a court to invalidate a termination proceeding upon showing that notice requirements have not been satisfied. See 25 U.S.C. § 1914 (2018).

[4] Although this letter is dated January 17, 2018, the parties stipulate that it was actually sent on January 17, 2019.

[5] We note that "[t]he requisite notice to the tribe serves a twofold purpose: (1) it enables the tribe to investigate and determine whether the minor is an Indian child; and (2) it advises the tribe of the pending proceedings and its right to intervene or assume tribal jurisdiction." (Internal quotation marks omitted.) *In re N.R.*, 242 W. Va. 581, 590, 836 S.E.2d 799 (2019), cert. denied sub nom. *Rios* v. *West Virginia Dept. of Health & Human Resources*, U.S.    , 140 S. Ct. 1550, 206 L. Ed. 2d 385 (2020).

[6] The petitioner argues, in the alternative, that the notice sent to the tribe substantially complied with ICWA, and that any alleged deficiency with it was harmless. Because we conclude that the notice complied with the requirements set forth by the plain and unambiguous language of ICWA, we need not address the petitioner's alternative arguments. It is worth noting, however, that it is undisputed that the tribe had actual notice of the termination proceedings but took no action in them beyond intervening.

[7] The respondent fails to indicate in her brief to this court when she filed her motion to open evidence, whether the petitioner filed an objection to her motion, or when the court denied it. She has not provided any record citations facilitating our review of this claim. It is not clear from the respondent's brief whether the court heard oral argument on her motion or decided it on the papers. She also failed to provide the citation to the motion to open that she included in her appendix.

[8] The respondent also argues that "there is a discrepancy between the court finding that the foster parents were willing to adopt and the representation from the department that they wanted to continue to foster him." For the reasons set forth in part II of this opinion, we need not address this argument further.