## IN RE RYAN V. ET AL.*
## (AC 16377)

Dupont, C. J., and Spear and Hennessy, Js.

Argued May 2—officially released August 5, 1997

*Carolyn C. Mihalek*, for the appellant (maternal grandmother).

*Linda Pearce Prestley*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 4166B.2, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Opinion*

DUPONT, C. J. This appeal arises out of an action for termination of parental rights. The grandmother of the minor children appeals from the trial court's judgment denying her motion to intervene in the trial of the termination of the parental rights of her daughter. We conclude that the grandmother, as a would-be intervenor, had no legal interest entitling her to intervention.[1]

The relevant facts are those that follow. On April 20, 1994, the minor children were committed to the department of children and families (department), after neglect and uncared for petitions were filed by the commissioner of children and families (commissioner). Subsequently, the commissioner initiated termination of parental rights proceedings[2] against the children's mother and their fathers.[3] On August 7, 1995, the department, counsel for the children and counsel for the mother appeared in court for the termination of parental rights plea hearing. The grandmother was also present by the agreement of the parties. The mother of the children was not present. The trial court informed the grandmother of her rights at this hearing, stating that

[1] Because of this conclusion, we need not determine whether this appeal from the denial of a motion to intervene should be dismissed for lack of a final judgment.

[2] General Statutes § 17a-113 provides in relevant part: "When application has been made for the removal of one or both parents as guardians or of any other guardian of the person of such child, or when an application has been made for the termination of the parental rights of any parties who may have parental rights with regard to any minor child, the superior court in which such proceeding is pending may, if it deems it necessary, order the custody of such child to be given to the Commissioner of Children and Families . . . ."

[3] This appeal concerns the termination of only the mother's parental rights. The older child's father was included in the petition to terminate parental rights but he died before the proceedings involving the termination had been concluded. The father of the younger child consented to having his rights terminated. The mother of the children has not appealed from the judgment of termination.

the grandmother could file a motion to intervene in the termination case and could hire her own counsel if she chose. On September 13, 1995, the parties and the grandmother appeared again before the court on a motion by the department to extend the commitment of the children. The children's commitment was extended for a period not longer than eighteen months.

The trial on the termination petitions was held on November 14, 1995. The grandmother was not present at the trial, and had no notice of it because she had not attempted to intervene after having been advised of her right to intervene on August 7, 1995. The department became the statutory parent[4] for the children pending interaction study results, which would measure how well the children interacted with both foster parents and their grandmother, and which would ultimately be used to decide their permanent placement.[5]

On June 21, 1996, the grandmother filed a motion to intervene as a party for the purposes of seeking "(1) in the adjudicative phase: full custody and guardianship or (2) in the dispositive phase: adoption." The judgment of termination was rendered by the trial court on July 2, 1996. The judgment of the trial court, with which this opinion is concerned, occurred on August 29, 1996, when the court denied the motion to intervene. The motion to intervene is not a postjudgment motion vis-a-vis the termination judgment because it was filed prior to that judgment, and was not filed for any purpose relating to whether termination of parental rights was

---

[4] General Statutes § 17a-93 defines statutory parent: "(f) 'Statutory parent' means the Commissioner of Children and Families or that child-placing agency appointed by the court for the purpose of giving a minor child or minor children in adoption . . . ."

[5] The grandmother, the foster parents in whose care the department had placed the children, and the children attended a psychological evaluation on November 7, 1995. A report was issued on December 28, 1995, concluding that the children should be adopted by the foster parents with the grandmother maintaining visitation with the children.

proper. The grandmother does not claim aggrievement arising from the judgment that terminated her daughter's parental rights.

The grandmother claims on appeal that the trial court improperly denied her permissive intervention in her daughter's termination of parental rights trial. She argues that, since she was present at all other phases of the termination proceedings, she should have been given notice of the termination trial as any of the parties, and that, since she did not receive such notice, her rights regarding adoption of the children were prejudiced. The dispositive issue before us, however, is not whether the grandmother should have been allowed to intervene, permissively or as of right, but whether the grandmother had standing to file the motion, where her purpose in doing so was not to affect the result of the termination trial, but to effect an adoption, or custody for herself.[6] Unless standing exists, there is no jurisdiction to entertain the motion. See *State* v. *Anonymous*, 237 Conn. 501, 510, 680 A.2d 956 (1996). We conclude that the grandmother's motion to intervene was properly denied and affirm the judgment of the trial court.

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . If a party is found to lack standing, the

---

[6] The grandmother does not claim that she should have been allowed to intervene as a matter of right. At the time the motion to intervene was filed, the trial had already concluded, but judgment had not yet been rendered. Cases, therefore, that determine whether an interlocutory review of the denial is immediately appealable because there is a colorable claim to intervene as a matter of right are not applicable. See *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 292, 497 A.2d 780 (1985). Cases involving permissive intervention are also not applicable because they do not involve standing or aggrievement but whether a trial court abused its discretion in failing to allow intervention. See *Horton* v. *Meskill*, 187 Conn. 187, 198, 445 A.2d 579 (1982).

court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) Id. "In order to be heard on a motion to intervene, a movant must have standing; he must allege a colorable claim of injury, or an arguably protected interest that will be affected." *Washington Trust Co.* v. *Smith*, 42 Conn. App. 330, 337, 680 A.2d 988, cert. granted, 239 Conn. 919, 682 A.2d 1014 (1996).

The grandmother claims that she did not need to file the motion to intervene, since as a "de facto party" she should have been given notice of the termination trial so that her rights would not be prejudiced. We do not recognize "de facto parties" as the grandmother would wish. Practice Book § 1023.1 (k) (2) defines "legal party" as "[a]ny person, including a parent, whose legal relationship to the matter pending before the court is of such a nature and kind as to mandate the receipt of proper legal notice as a condition precedent to the establishment of the court's authority to adjudicate the matter pending before it . . . ." Here, it was not necessary that the grandmother receive official notice of the proceedings.[7]

Although the grandmother, as a blood relative of the children, has an interest in any controversy relating to the future living arrangements of the children, she asserts no interest in the termination proceedings. The grandmother did not seek intervention to argue whether the mother's parental rights should have been terminated. Rather, she sought to argue that she should be awarded custody or be allowed to adopt. Adoption decisions are not made until after the termination and are separate proceedings in Probate Court. See General

---

[7] Although there is a statutory provision for notice to foster parents of proceedings relating to the placement or the revocation of commitment of a foster child; see General Statutes § 46b-129 (i); the proceeding here did not involve a foster parent, nor did it relate to placement or revocation of commitment, but rather to the termination of parental rights.

Statutes § 45a-725 et seq.[8] The children's commitment to the department, which is a creature of statute, is temporary until their adoption. See General Statutes § 17a-112 (i).[9] "It is . . . essential, in considering a petition to terminate parental rights, to sever completely the issues of whether termination is statutorily warranted and whether a proposed adoption is desirable. Although petitions for termination are presumably seldom brought unless prospective adoptive parents are available, there still must be a two-step process to determine, first, the threshold question of whether cause for termination under [General Statutes] § 17-43a has been proved. The best interests of the child, as such, is not an ingredient of [grounds for termination] and is not involved in this threshold question. . . . Only if a ground for termination exists may the suitability and circumstances of adoptive parents, in an appropriate proceeding, be considered." (Citations omitted; internal quotation marks omitted.) *In re Juvenile Appeal (Docket No. 10718)*, 188 Conn. 259, 262, 449 A.2d 165 (1982).

The termination of parental rights had no effect on the grandmother's ability to adopt the children in the future. Evidence from the termination proceedings,

---

[8] General Statutes § 45a-725 provides in relevant part: "A minor child shall be considered free for adoption and the Court of Probate may grant an application for the appointment of a statutory parent if any of the following have occurred . . . (c) all parental rights have been terminated under Connecticut law . . . ."

[9] General Statutes § 17a-112 (i) provides: "In the case where termination of parental rights is granted, the guardian of the person or statutory parent shall report to the court within ninety days of the date judgment is entered on a case plan, as defined by the federal Adoption Assistance and Child Welfare Act of 1980, for the child. At least every six months thereafter, such guardian or statutory parent shall make a report to the court on the implementation of the plan. The court shall convene a hearing for the purpose of reviewing the plan for the child no more than fifteen months from the date judgment is entered and at least once a year thereafter *until such time as any proposed adoption plan has become finalized.*" (Emphasis added.)

other than the fact that parental rights were indeed terminated, may not even be relevant in an adoption proceeding in Probate Court, which would instead turn on the suitability of prospective adoptive parents and the best interests of the child. The grandmother here has an expressed interest in a future adoption decision, rather than in the decision of whether her daughter's parental rights should be terminated.

The grandmother argues, citing *In re Baby Girl B.*, 224 Conn. 263, 618 A.2d 1 (1992), that the trial court abused its discretion in denying her motion to intervene. That case involved a denial of a motion to intervene filed by foster parents after the trial court granted a motion to open the judgment of termination of the mother's parental rights. The abuse of discretion standard is appropriate when a party challenges the denial of a motion to intervene where that party has standing and where the intervention is sought in order to argue whether a parent's rights should be terminated. See id., 277–78. Only then is an analysis of permissive intervention or intervention as of right proper. This case, however, is not like *In re Baby Girl B.*, because the grandmother did not seek to intervene in the termination trial to challenge the trial court's termination of her daughter's parental rights, but rather to effect an adoption. She had no standing to intervene for this second purpose.

Even if the grandmother did have standing, the effect of granting an intervention after the conclusion of the trial would be to open the judgment and to begin the proceedings again, with no likely change in result.[10] That would only delay finding a permanent home for

[10] All of the parties and the grandmother agree that termination of the mother's parental rights was inevitable, since no one, including the grandmother, had heard from her in over one year, and her whereabouts at the time of the termination trial, despite the best efforts of her appointed counsel, were unknown.

the children, whether that home was with the grandmother or with some other person or persons.

We conclude that the trial court correctly denied the motion to intervene because the children's grandmother had no legal interest in the action to terminate parental rights. Because she had no real interest in the action in which she attempted to intervene, she lacked standing and the court was without subject matter jurisdiction to grant her motion. *State* v. *Anonymous*, supra, 237 Conn. 510.

The judgment is affirmed.

In this opinion the other judges concurred.