[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes to the court as a hearing in damages following the entry of partial summary judgment entered on December 16, 1996. CT Page 13044
This is an action on a promissory note given by the defendants Krass, Keneghan and Sutton to Landmark Bank on April 24, 1990. The note was accompanied by a guarantee agreement of even date signed by the defendant 17 West Main Street, Associates. The note is in the principal amount of one hundred and fifty thousand dollars, payable monthly in arrears "at a rate per annum equal to (I) a floating rate of two (2) percentage points greater than the prime rate of interest (the `Prime Rate'), designated from time to time by the Payee as being its prime rate of interest, which floating rate shall change on the effective date of the change in The Prime Rate."
The defendants have defaulted in payment, having paid no payments on the note.
On March 28, 1991 the Federal Deposit Insurance Corporation became the receiver of Landmark Bank. Pursuant to federal law,12 U.S.C. § 1821(d) (1) the FDIC succeeded to "all rights, titles, powers, and privileges" of the failed bank. It is not questioned, or questionable, that the FDIC acquired at that time all of the right, title and interest in the assets of the bank. It is not questioned, or questionable, that the outstanding loans, and the commercial paper representing those loans, are an asset of the bank, and pass to the FDIC as a matter of law.
The defendants claim in this hearing in damages that the present plaintiff has no right, no standing, to enforce the promissory note, and hence the guaranty, and consequently that the court lacks subject matter jurisdiction to entertain this action, including this hearing in damages.
The defendant further claims that because Landmark Bank is a failed bank, no longer in existence, it has no periodic designated prime rate, and hence, absent a valid and proven or provable substituted interest rate, the plaintiff would in any event not be entitled to collect interest on the note.
 I Subject Matter Jurisdiction
The defendants claim that the court lacks subject matter jurisdiction to entertain this action. The defendants claim that the plaintiff lacks standing to prosecute this action. In re
CT Page 13045Ryan, 46 Conn. App. 69, 72 (1997).Whenever the absence of jurisdiction is brought to the attention of the court the matter must be decided before any action is taken. East Side Civic Assn.v. Planning Zoning Commission, 161 Conn. 558, 559 (1971).
The claim of the defendant is that because the note bore an endorsement "Pay to the order of the Federal Reserve Bank of Boston", which endorsement is stamped "Endorsement Canceled", bearing that notation date of "3/29/91" the plaintiff cannot be a proper party to bring this action.
The endorsement from which this plaintiff derives a status as endorsee is an endorsement dated 4/14/94 as follows: "Without recourse, Pay to the Order of RMA Partners, L.P. Federal Deposit Insurance Corporation, Receiver for: Landmark Bank, Hartford, Connecticut."
How and why and when the canceled "endorsement" to the Federal Reserve Board appears on the note is not explained to the court. The circumstances giving rise to the stamped cancellation, effectuated March 29, 1991, the day after the takeover by the FDIC, is not explained to the court. Whatever may be the circumstances, it is obvious that the FDIC acted in accordance with its position that it had the right to hold and to thereafter endorse the note to the plaintiff.
It is elementary that in order to negotiate an instrument there must be delivery to a transferee, who may thereafter claim to be a holder of the instrument.
 Sec. 42a-3201. Negotiation. (a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.
 (b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument is payable to bearer, it may be negotiated by transfer of possession alone.
 General Statutes § 42a-3-201. Emphasis added.
CT Page 13046
There is no indication on the note, nor is there any evidence produced, that there was ever any delivery of the note to the Federal Reserve Bank of Boston. A preliminary intent to negotiate a note is not the negotiation of the note.
The Federal Reserve Bank has not sought to intervene in this action. There is no indication in the evidence that the note was ever delivered to, let alone returned by, the Federal Reserve Bank. The original note was produced by the plaintiff, entered as exhibit 4 in this hearing, which undoubtedly leads to the conclusion that the Federal Deposit Insurance Corporationdelivered the original note to the plaintiff in conjunction with its endorsement of the note to the plaintiff.
Had there been evidence of actual delivery of the note to the Federal Reserve Bank, together with any evidence that the Federal Deposit Insurance Corporation would thereafter have reacquired
possession of the note, that scenario would be controlled by the provisions of General Statutes § 42a-3-207, Reacquisition.
 Reacquisition. Reacquisition of an instrument occurs if it is transferred to a former holder, by negotiation or otherwise. A former holder who reacquires the instrument may cancel endorsements made after the reacquirer first became a holder of the instrument. If the cancellation causes the instrument to be payable to the reacquirer or to bearer, the reacquirer may negotiate the instrument. An endorser whose endorsement is canceled is discharged, and the discharge is effective against any subsequent holder.
Under either of these circumstances, failure of negotiation because of non-delivery, or later reacquisition of the instrument by the successor in title to Landmark Bank, the Federal Deposit Insurance Corporation, then the FDIC would have the right to transfer the note to the plaintiff. Hence the plaintiff, as transferee of the instrument had the right to, and was the proper party, to bring this action.
The court rejects the contention of the defendant that this plaintiff lacks standing to bring this action. The court determines that it has subject matter jurisdiction to hear and to determine this action, and to proceed to adjudicate this hearing CT Page 13047 in damages.
 II
It is the defendant's further contention that the plaintiff is precluded from collecting interest on the note because Landmark Bank is no longer in business, and because the chargeable interest on the note is dependant upon the payee's (Landmark's) prime rate, there is therefore no rate of interest which can be calculated for this note.
Alternatively the defendant claims that the plaintiff has not demonstrated that the substitute rate which the plaintiff proposes to use is reasonable.
It is firmly established under the law of this state that when a bank fails and is taken over by the FDIC, notes thereby acquired by the FDIC which are geared to the failed bank's prime rate will carry a substitute rate which is "reasonable under the circumstances". Mechanics Farmers Savings Bank, FSB v. DelcoEquipment Co., 232 Conn. 594, 598 (1995). The trial court must determine whether the evidence demonstrates that the substituted rate is reasonable "by examining the documents and testimony offered by the plaintiff." Central Bank v. Colonial RomanelliAssociates, 38 Conn. App. 575, 578 (1995).
The plaintiff has submitted the following evidence as concerns the interest due on the obligation.
A. The interest due on the obligation up to the date of the FDIC takeover March 28, 1991, claimed to be $1,666.67. This information was compiled by the bank at the request of the FDIC, as pertains to the then outstanding loans. The detailed compilation is set forth as plaintiff's exhibit 2, a computer printout which includes many hundreds of loans. The printout is a compilation of the detailed information on each of the loans as contained in the bank's records for each individual loan. These reflect the actual rates utilized by Landmark Bank up to the time of the takeover. Even though the printout was generated at the request of the FDIC, that printout would have been generated by the bank in the normal course of its business had the takeover not taken place. The court finds that this figure is the actual interest properly charged by Landmark Bank for the pretakeover period is $1,666.67, and has been proven by the plaintiff. CT Page 13048
As to the rates of interest sought to be charged subsequent to the FDIC takeover on March 28, 1991 this court must determine whether the substitute rate is "reasonable under the circumstances". Mechanics Farmers Savings Bank v. Delco, supra
p. 598. As aforesaid, the inquiry is not to determine what would have been the precise, exact, rate which the bank would have charged had it remained in business. Such an inquiry would be impossible because the bank ceased business, and there would be no person(s) who could speak, predict, authoritatively for the bank in this matter.
The plaintiff produced testimony from Ms. Therese Thurston, an FDIC loan technician, who indicated that she used the Wall Street Journal prime rate plus two (+2) so as to compute the rate of interest, and that the FDIC computer utilizes the Wall Street Journal prime rate to set its prime rate for its computer purposes. However, the source material for this information, to wit the Wall Street Journal publication(s), were not submitted into evidence at this trial. Hence the court disregards this testimony, as the basis for the FDIC records is plainly hearsay. See Federal Deposit Ins. Corp. v. Keating, 44 Conn. App. 566, 559
(1997). The mere incorporation of the business records of another, who has no duty to report to the incorporator, does not cause the source information to become the business records of the incorporator under the Business Records exception to the hearsay rule. Further there is no evidence before the court for the court to conclude that the Wall Street Journal rate is a recognized statistical source for this information.
Disregarding, however, the purported source of the FDIC's statistical basis, the Wall Street Journal, yet the inquiry before the court remains the same — is the substitute rate sought to be charged reasonable.
The plaintiff has introduced into evidence the official publications of the board of Governors of the Federal Reserve System, Washington, DC, captioned "Federal Reserve Bulletin, Volume 83, Number 7, July 1997". The entire publication is a multi-page bound volume prepared for general circulation throughout the United States, with circulation world wide, which is transmitted without charge to each member bank of the federal reserve system. See plaintiff's exhibit 11. Additionally, the plaintiff has submitted into evidence exhibit #10 which is the relevant page of the "Annual Statistical Digest" published by the Board of Governors of the Federal Reserve System. CT Page 13049
It is unnecessary for the court to discuss the Federal Reserve System, or the role of the Board of Governors of the Federal Reserve System, other than to take notice that it is an independent entity, created by Congress, the compilation of which data is essential to the functioning of the Federal Reserve System; and whose activity, through the setting of the discount rate, is the major financial monitor and guardian of the national financial economy.
The court notes furthermore that the Federal Reserve System is separate and independent from the Federal Deposit Insurance Corporation, and hence has no financial or other potential of gain from this or any other litigation affecting the FDIC. The court discerns no self serving interest of the Federal Reserve System in the compilation or publication of these statistics. To the contrary, it is obvious that the proper statistical compilation of these rates are essential to the fulfillment of its obligations as mandated by Congress.
It is commonly recognized, as has long been the law in this state that statistical information, published independently for non self-serving purposes are admissible in evidence for the purposes of establishing reliable statistical information. See Tait and LaPlante, Handbook of Connecticut Evidence, Second Edition, § 11.20, P. 406. Mortality tables, weather reports, NADA price lists on automobiles, and the like are a few of the examples of such objective statistical data, as are universally entered into evidence to demonstrate both present and historical data and statistics. An adverse party may, if it so chooses, attempt to discredit the validity of the statistical data. The defendant's chose not to do so either in evidence or by argument to this court. The court accepts the validity of the Federal Reserve statistics.
The following is a listing of the note rates by the FDIC compared to the Federal Reserve rate, from exhibit 9.
For the period March 28, 1991 through February 18, 1994 the court has compared the rates charged by the FDIC (exhibit 8) compared to the prime rate reported by the Federal Reserve statistics (exhibit 10), adding two percentage points to the latter. The court observes, and concludes, that mostly, with one exception of several weeks, the date that the Federal Reserve reported prime rate changes so did the rate recorded or charged by the FDIC change accordingly, and that the rate as charged by the FDIC changed to precisely the prime rate of the Federal CT Page 13050 Reserve report, plus (adding on) two percentage points. The fact that the FDIC used as its source a coinciding Wall Street Journal Report is not material to this issue. The issue is whether the rate used, the dollars charged, is reasonable. The court concludes that the interest rates charged, as calculated by the FDIC, when cross referenced to the Federal Reserve rate, for the period March 28, 1991 though February 18, 1994 has been proven by the plaintiff to be "reasonable under the circumstances." Mechanics Farmers Savings Bank FLB v. Delco supra, P. 598. The court concludes that the total interest from date of inception April 24, 1990, to and including February 18, 1994, is $39,406.17.
On March 24, 1994 the Federal Reserve reports reveal that the prime rate changed from 6% to 6.25% and appears to have increased for all periods thereafter. The plaintiff has produced evidence, by a Mr. Slaver, that the plaintiff seeks to charge a total rate
of 8%, $12,000 per annum, for all periods subsequent their acquisition on February 19, 1994. This rate favors the defendants, when compared to the Federal Reserve prime rate plus two, and hence is accepted by the court. The interest accumulated from February 19, 1994 to trial date August 5, 1997 is determined to be $42,162.45.
The court will take evidence from the parties as to the mathematical calculation of interest, and hence dollar amounts, at 8% per annum, due on the interest from August 5, 1997 to and including the date when the court next hears evidence on this subject, together with any claims for further sums due, including attorneys fees. These matters could not be determined prior to the court determining the substantive issues herein determined by the court, and as briefed by the parties on September 15, 1997.
Lest there be any confusion, the court would emphasize that the issue before the court is not to determine whether the method of interest calculation utilized by the plaintiff, or its predecessor, FDIC, in arriving at its calculations, prior to trial (the Wall Street Journal), was or was not a proper method. The issue before the court, at this trial, from the evidence presented at trial, is whether the amounts herein sought to be charged in this action are in fact based upon a fair and reasonable substitute rate.
It should be noted that the plaintiff further contends that if interest cannot be calculated by use of a proper substituted rate, such circumstances would be provided for by General CT Page 13051 Statutes § 42a-3-112(b). This statute provides, in part, as follows:
 . . . "If an instrument provides for interest, but the amount of interest payable cannot be ascertained from the description, interest is payable at the judgment rate in effect at the place of payment of the instrument and at the time interest first accrues."
Under the provisions of General Statutes § 37-3a the judgment rate of interest is ten percent, which would appear to call for such rate under the provisions of General Statutes §42a-3-112 (b).
As compelling as these propositions may be, the court deems that it is unnecessary to address any such proposition, which in this instance would be unfavorable to the defendant as the court has determined that the substitute rate sought to be charged is a reasonable substitute rate.
As indicated, the parties are to contact the court to schedule a hearing to determine the remaining calculations as to damages and costs of collection including reasonable attorneys fees.(Promissory Note Exhibit 4, P. 2).
L. Paul Sullivan, J.