******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# IN RE NICKOLA J. CUNHA
## (AC 46813)

# NICKOLA J. CUNHA *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
## (AC 46890)

Bright, C. J., and Cradle and Seeley, Js.

*Syllabus*

In these consolidated appeals, the respondent attorney appealed, in the first case, from the judgment of the trial court ordering a trustee to disburse funds from the respondent's fiduciary accounts following her disbarment from the practice of law and, in a second case, from the judgment of the trial court dismissing as moot her action seeking a declaratory judgment regarding attorney's fees allegedly owed to her. The respondent claimed, inter alia, that the trial court lacked subject matter jurisdiction to have permitted third parties to intervene in the postdisbarment proceedings to settle a dispute over attorney's fees. *Held*:

Contrary to the respondent's claim that, because the underlying disciplinary proceedings against her were initiated pursuant to statute (§ 51-84) and the rule of practice (§ 2-45), the trial court's jurisdiction was exclusively limited to determining what discipline should be imposed on the respondent, the trial court, pursuant to the rule of practice (§ 2-64) and its inherent authority, had subject matter jurisdiction over the respondent's client files for the purpose of protecting the interests of her clients and unfettered power to act as situations may seem to require to achieve that purpose, including granting permissive intervention to third parties.

The trial court did not abuse its discretion in granting permissive intervention in the postdisbarment action to two former clients and an insurance company holding disputed funds, as the intervention was timely and likely to expedite the resolution of the underlying proceedings, the intervenors had a clear interest in the controversy, and the necessity and value of the intervention were apparent because the resolution of the intervenors' fee dispute was necessary before the court could completely determine the proper distribution of the respondent's funds to protect her former clients.

The trial court had subject matter jurisdiction, pursuant to Practice Book § 2-64 and its inherent authority, to resolve a dispute by former clients over the respondent's legal fees arising from a separate matter within the postdisbarment action.

Because this court affirmed the judgment of the trial court ordering the respondent's funds to be disbursed to her former clients, the appeal from the

court's dismissal of the respondent's declaratory judgment action regarding a portion of those funds was moot, and, accordingly, dismissed.

Argued October 2, 2024—officially released January 21, 2025

*Procedural History*

Order, in the first case, appointing a trustee to oversee the respondent's fiduciary accounts following the disbarment of the respondent from the practice of law, in the Superior Court in the judicial district of Middlesex, where the court, *Moukawsher, J.*, granted the motions of John Skura et al. to intervene, and action, in the second case, seeking a declaratory judgment as to the disbursement of certain attorney's fees allegedly owed to the plaintiff, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. Patty J. Pittman*, judge trial referee, granted the motion of the defendant State Farm Mutual Automobile Insurance Company to transfer the action to the judicial district of Middlesex; thereafter, the court, *Moukawsher, J.*, in the first case, ordered the trustee to disburse certain funds and rendered judgment thereon, and, in the second case, rendered judgment dismissing the action as moot, from which the plaintiff filed separate appeals to this court; subsequently, this court consolidated the appeals. *Affirmed in first case*; *appeal dismissed in second case.*

*Nickola J. Cunha*, self-represented, the appellant in Docket Nos. AC 46813 and 46890 (respondent in first case, plaintiff in second case).

*John Skura*, self-represented, the appellee in Docket No. AC 46813 (intervenor).

*Thomas A. Plotkin*, for the appellee in Docket Nos. AC 46813 and 46890 (intervenor State Farm Mutual Automobile Insurance Company in first case, defendant in second case).

*Brian B. Staines*, chief disciplinary counsel, for the amicus curiae in Docket No. AC 46813 (Office of Chief Disciplinary Counsel).

*Opinion*

CRADLE, J. These consolidated appeals arise from disciplinary proceedings against the respondent,[1] Nickola J. Cunha, related to her disbarment from the practice of law. In Docket No. AC 46813, the respondent appeals from the judgment of the trial court ordering that funds she claimed as attorney's fees be disbursed to her former clients (postdisbarment action). In Docket No. AC 46890, the respondent appeals from the same judgment[2] and, additionally, the trial court's judgment of dismissal rendered in a separate action commenced by the respondent in which she sought a declaratory judgment with respect to attorney's fees related to her representation of former clients (declaratory judgment action).[3] On appeal, the respondent claims that the court (1) improperly permitted third parties to intervene in the postdisbarment action where the intervenors lacked standing to invoke the jurisdiction of the court, and (2) lacked subject matter jurisdiction to resolve the claims

---

[1] Although Nickola J. Cunha is the plaintiff in the underlying action in Docket No. AC 46890, for the sake of clarity, she is referred to as the respondent throughout this opinion.

[2] On the appeal form that the respondent filed in AC 46813, she lists the trial court docket number of the postdisbarment action for the judgment from which she is appealing. On the appeal form that the respondent filed in AC 46890, she lists the trial court docket numbers of both the declaratory judgment and the postdisbarment actions for the judgments from which she is appealing. The preliminary statements of issues that she filed are identical in both appeals.

[3] On August 28, 2023, the respondent filed a motion for review of the court's disbursement decision and the court's judgment of dismissal in the declaratory judgment action. On December 13, 2023, this court denied the respondent's motion for review and sua sponte ordered the consolidation of the appeals in AC 46813 and AC 46890.

raised by the intervening parties and by a nonparty.[4] We affirm the judgment of the trial court in AC 46813 and consequently dismiss the appeal in AC 46890 as moot.

By way of background, the respondent, on January 25, 2022, was disbarred from the practice of law for misconduct related to her representation of a party in a marriage dissolution matter. In *Ambrose* v. *Ambrose*, 223 Conn. App. 609, 637, 309 A.3d 305 (2024), this court affirmed the January 25, 2022 judgment of the trial court disbarring the respondent. The present appeals concern disciplinary proceedings ancillary to that judgment. The following facts, as set forth by the trial court, and procedural history are relevant to the resolution of the respondent's claims.

On January 28, 2022, the court, *Moukawsher, J.*, issued an order in the marriage dissolution matter setting forth procedures related to his order disbarring the respondent from the practice of law and, pursuant to Practice Book § 2-64,[5] appointed Attorney Corrine A.

---

[4] The respondent also claims that certain court orders were ex post facto orders in violation of her due process rights. The respondent, however, fails to advance any substantive legal or factual analysis explaining how the orders were ex post facto or how they deprived the respondent of her due process rights. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Citation omitted; internal quotation marks omitted.) *State* v. *Buhl*, 321 Conn. 688, 724, 138 A.3d 868 (2016). We therefore conclude that any such claims are inadequately briefed, and, accordingly, we decline to address them.

[5] Practice Book § 2-64 provides in relevant part: "(a) Whenever an attorney is placed upon inactive status, suspended, disbarred, or resigns, the court, upon such notice to him or her as the court may direct, shall appoint an attorney or attorneys to inventory the files of the inactive, suspended, disbarred or resigned attorney and to take such action as seems indicated to protect the interests of the attorney's clients. . . ."

Boni-Vendola as trustee "to take such steps as are necessary to protect the interests of [the respondent's] clients' funds, [interest on lawyers' trust account (IOLTA account)], and all fiduciary accounts." The court's order further instructed the respondent not to withdraw any funds from those accounts and directed the respondent to provide the trustee, within seventy-two hours, a list of her clients, including their contact information and itemization of all billing identifying any balance remaining, all active or pending case files, and information regarding the respondent's financial accounts. The order stated that the respondent's failure to comply shall be considered misconduct and may subject her to punishment for contempt of court. Thereafter, the court established a separate docket for administrative purposes in connection with the winding up of the respondent's law practice.[6]

On February 8, 2022, the trustee filed a motion for advice, indicating that the respondent had yet to provide the required documents and information pursuant to the court's January 28, 2022 order. On the same date, the court issued an order instructing the trustee to file a motion for contempt against the respondent if she did not comply within seven days.[7] On February 10, 2022, the trustee notified the court that the respondent still had not turned over the required materials and, additionally, that the respondent's bank had informed the trustee that on February 2, 2022, the respondent had withdrawn $30,000 from her IOLTA account. The trustee, on February 16, 2022, again sought the advice of the court, indicating that because the bank is "unable to change the signer" on the respondent's IOLTA account,

---

[6] The court entered its January 25, 2022 memorandum of decision disbarring the respondent from the practice of law as the judgment in the postdisbarment action.

[7] The court's order further stated that, "[i]n the meantime, the trustee should attempt to determine through any public means the information she requires and begin carrying out her duties."

it needed a court order authorizing it to open a new IOLTA account and to transfer the funds from the respondent's account to the new account. On March 2, 2022, the court issued an order authorizing the bank to take such action and further ordered that the Office of Chief Disciplinary Counsel (disciplinary counsel) "is hereby authorized to file appropriate motions to enforce [the] court's orders and to participate in [the] proceedings to whatever extent may be needed to protect the public interest and the interest of [the respondent's] former clients." Two days later, on March 4, 2022, disciplinary counsel filed a motion for contempt against the respondent for her failure to comply with the court's January 28, 2022 order.

On April 27, 2022, following a hearing, the court granted disciplinary counsel's motion for contempt against the respondent, finding that she had not complied with the court's order in that she failed to provide the trustee with any of the required documentation or information and that she had withdrawn, without authorization, $30,000 from her IOLTA account. The court noted that the respondent failed to offer any evidence to support her entitlement to the withdrawn funds and instead "gave a rambling account of having done a bunch of work for the client in question on various cases." Accordingly, the court further granted the request of disciplinary counsel to order an audit of the respondent's IOLTA account, stating that "[o]ne purpose of ordering the audit is to direct . . . disciplinary counsel—in cooperation with the trustee—to determine if [the respondent] stole her client's $30,000."[8]

---

[8] The court further ordered the respondent to appear in person before the court on May 11, 2022, and stated that, if the respondent failed to provide the trustee with the client information prior to that hearing, the court would consider "other steps to ensure compliance" with its January 28, 2022 order. On May 11, 2022, the respondent did not appear at the hearing and the trustee represented to the court that the respondent had not provided the client information. The court issued a capias for the respondent and, at the request of the trustee, stayed the capias until May 16, 2022. On May 16,

On June 1, 2022, disciplinary counsel filed a motion to disburse funds, reporting therein that a limited audit of the respondent's IOLTA account revealed a single deposit in the amount of $290,421.65, reflecting the net proceeds of a personal injury settlement of Paula Moen, a former client of the respondent. Disciplinary counsel, on the basis of "[his] examination of the IOLTA account bank records, [his] discussions with the client Moen, and limited information from the respondent," stated that Moen was due a minimum of $179,723.85 as net proceeds from the settlement.[9] Disciplinary counsel further stated that it appeared that only a portion of the settlement proceeds, in the amount of $101,470.13, remained in the respondent's IOLTA account and that this amount should be paid to Moen, thereby leaving an outstanding balance of $78,253.72 due to Moen. In addition, disciplinary counsel asserted that its limited audit revealed that the respondent, on top of her one-third attorney's fee from the settlement, had taken, without authorization from the court, an additional $78,000, rather than the previously believed $30,000, from Moen's settlement proceeds. The court subsequently granted disciplinary counsel's motion to disburse the funds, and the trustee tendered a check payable to Moen in the amount of $101,470.13.

Thereafter, at the direction of the trustee and disciplinary counsel, Attorney Steven M. Lettick, the respondent's cocounsel in several prior matters, paid into the

2022, the trustee reported that the respondent had delivered three case files but claimed that most of her former clients have possession of their files. The trustee indicated that she "is unable to contact many of [the respondent's] former clients to confirm [that claim] as she was not given phone numbers, email addresses, or mailing addresses for many of [the respondent's] former clients." The following day, on May 17, 2022, the court ordered the capias to be executed, and, on June 3, 2022, it was served on the respondent.

[9] Disciplinary counsel calculated the amount due to Moen by subtracting from the settlement proceeds the respondent's one-third contingency fee, pursuant to the attorney fee agreement with Moen, as well as costs and expenses.

new IOLTA account several checks representing the respondent's earned attorney's fees from those matters. On November 7, 2022, the respondent filed a motion seeking immediate disbursement of her attorney's fees paid into the new IOLTA account by Lettick, asserting that the "trustee has not engaged in any legal services for the prior clients of the [respondent] that would entitle [the trustee] to a proportionate share of the legal fees earned by the [respondent]." The court denied the respondent's motion, stating: "When the court disbarred [the respondent], it set up a process to account for what she is owed and what she owes her clients. [The respondent] has not cooperated with that process thus frustrating attempts to know what she may be owed. Additionally, some of [the respondent's] clients are disputing her right to the money she seeks in her motion. The court can't grant her motion when her right to the money is either disputed or unknown. The court orders the trustee to consult with disciplinary counsel and any other necessary persons to form an opinion on who has a right to the money."

Thereafter, on March 21, 2023, disciplinary counsel notified the court that John Skura and his wife, Lie Tjun Lim Skura, former clients of the respondent, had settled their claims for uninsured motorist coverage with State Farm Mutual Automobile Insurance Company (State Farm) directly. Disciplinary counsel stated that the Skuras had contacted him claiming that the respondent was not entitled to attorney's fees from their settlements due to "misconduct" and informed the court that State Farm was holding the disputed fees, in the total amount of $17,499.99, while awaiting instructions as to whom the money should be disbursed. Accordingly, disciplinary counsel filed a motion for order "requesting the court's guidance in determining the proper forum for resolving [the Skuras'] claim[s]." Meanwhile, the respondent commenced the declaratory judgment

action against State Farm, seeking a declaratory judgment that she was entitled to the disputed $17,499.99 as her attorney's fees arising from her representation of the Skuras.

On April 5, 2023, the court in the postdisbarment action issued an order stating in relevant part: "[T]he court received notice that State Farm . . . is holding $8333.32 related to the claim of one former client [John Skura] and $9166.66 for another [ Lie Tjun Lim Skura]. . . . The clients apparently claim [that the respondent] should forfeit these sums for misconduct and State Farm wants to know what to do with the money. To resolve this dispute, the court orders the trustee . . . to invite State Farm to move in this case to interplead these sums into court for disposition. The trustee is to invite the former clients to move to intervene in this case for the purpose of claiming these sums. . . . [U]nder Practice Book § 2-64, this court has jurisdiction over all funds associated with the winding up of [the respondent's] practice. The parties to any such litigation may move to consolidate them with this matter." Thereafter, the Skuras and State Farm filed motions to intervene in the postdisbarment action. The respondent moved to dismiss the motions to intervene on the ground that the prospective intervenors lacked standing to intervene, thereby depriving the court of subject matter jurisdiction to resolve their claims. Following a hearing, on June 23, 2023, the court denied the respondent's motions to dismiss, reasoning that § 2-64 provided the court with jurisdiction over the disputed funds in that it was required "to protect [the respondent's] clients by making sure monies that may be due to them are collected under the protection of the trustee and disbursed in accordance with law." The court therefore granted State Farm's motion to intervene for the purpose of interpleading the disputed funds into the court and granted the Skuras' motions to intervene "for the

sole purpose of asserting their claim to money held by the trustee." Subsequently, on June 26, 2023, upon motion by State Farm and over the respondent's objection, the declaratory judgment action was transferred to the same judicial district as the postdisbarment action.[10]

On July 21, 2023, the court held a hearing, at which it heard testimony from Moen and John Skura, regarding the disbursement of the attorney's fees related to the Skuras' settlements and the remaining balance of the respondent's IOLTA account in the amount of $34,601.20, which was funded entirely by the respondent's earned attorney's fees from prior matters paid into the new account by Lettick.[11] Thereafter, on August 15, 2023, the court rendered a judgment of dismissal in the declaratory judgment action against State Farm, stating that it had "entered orders disposing of the money and, consequently, of this claim" on the basis of its June 23, 2023 order directing State Farm to interplead the disputed funds into the postdisbarment action. The following day, on August 16, 2023, the court issued a memorandum of decision in the postdisbarment action, ordering the trustee to pay to John Skura the funds, in the amount of $17,499.99, that otherwise would have been the respondent's attorney's fees related to his and his wife's settlements.[12] In addition, the court, finding that the respondent "had no legal

----

[10] We note that, although the declaratory judgment action was transferred to the same judicial district as the postdisbarment action, the two matters were never consolidated by the trial court.

[11] The respondent, chief disciplinary counsel, the trustee, and counsel for State Farm were present at the hearing.

[12] Lie Tjun Lim Skura was not present at the hearing. The court, noting that John Skura was "the only Skura to press his claims at the hearing," thus awarded him the respondent's attorney's fees relating to both his and his wife's settlements. Neither the respondent nor Lie Tjun Lim Skura has challenged on appeal the manner in which the court disbursed the monies to the Skuras.

right to take the $78,000 [from the settlement proceeds] she held in trust for [Moen]," ordered the trustee to pay Moen the remaining balance of the respondent's IOLTA account in the amount of $34,601.20. This consolidated appeal followed.[13]

## I

The respondent first claims that intervention by the Skuras and State Farm was improper in that the intervenors "lacked standing to invoke the jurisdiction of the trial court."[14] Specifically, the respondent argues that, because the underlying disciplinary proceedings were initiated pursuant to General Statutes § 51-84[15] and Practice Book § 2-45,[16] "the sole purpose [of the underlying proceedings was] the protection of the court." Accordingly, she asserts that the Skuras and State Farm had no "direct or immediate interest in the discipline

[13] Disciplinary counsel filed an application to appear as amicus curiae on the basis that he had participated as a "friend of the court" in the underlying disciplinary proceedings. On May 15, 2024, this court granted disciplinary counsel's application to file an amicus brief, and, on September 9, 2024, we granted disciplinary counsel's request to participate in oral argument.

[14] The respondent advances the same claim with respect to Moen. We note, however, that Moen never attempted to intervene, nor did she independently attempt to invoke the jurisdiction of the court otherwise. Rather, she appeared only as a witness at a hearing related to the reconciliation of the respondent's IOLTA account. Accordingly, we address the respondent's claim that intervention was improper only with respect to the intervening parties—specifically, the Skuras and State Farm.

[15] General Statutes § 51-84 provides "(a) Attorneys admitted by the Superior Court shall be attorneys of all courts and shall be subject to the rules and orders of the courts before which they act.

"(b) Any such court may fine an attorney for transgressing its rules and orders an amount not exceeding one hundred dollars for any offense, and may suspend or displace an attorney for just cause."

[16] Practice Book § 2-45 provides: "If [cause for attorney discipline] occurs in the actual presence of the court, the [disciplinary] order may be summary, and without complaint or hearing; but a record shall be made of such order, reciting the ground thereof. Without limiting the inherent powers of the court, if attorney misconduct occurs in the actual presence of the court, the Statewide Grievance Committee and the grievance panels shall defer to the court if the court chooses to exercise its jurisdiction."

of the [respondent] solely instituted to protect the court" and, therefore, could not establish standing to intervene as a matter of right. Conversely, State Farm argues that it and the Skuras joined the underlying proceedings by way of permissive intervention, rather than intervention as of right, and, accordingly, that the court did not abuse its discretion in granting their motions to intervene. We agree with State Farm.

The following legal principles are relevant to the resolution of the respondent's claim. When a controversy is before a court, "if a complete determination cannot be had without the presence of other parties, the court may direct that such other parties be brought in." General Statutes § 52-107. This statute "provide[s] for both permissive intervention and intervention as a matter of right." *BNY Western Trust* v. *Roman*, 295 Conn. 194, 203–204, 990 A.2d 853 (2010). "Intervention as of right provides a legal right to be a party to the proceeding that may not be properly denied by the exercise of judicial discretion. Permissive intervention means that, although the person may not have the legal right to intervene, the court may, in its discretion, permit him or her to intervene, depending on the circumstances." Id., 204 n.8.

In the present case, the court, after being made aware of the Skuras' claim to the funds being held by State Farm, directed the trustee to invite the relevant third parties, State Farm and the Skuras, to move to intervene in the postdisbarment action. The court indicated that, once the respective motions were filed, it would determine whether "interpleader and intervention are allowed." State Farm and the Skuras subsequently moved to intervene, and the court, following a hearing, granted their motions "for the sole purpose" of resolving the Skuras' fee dispute, characterizing the matter as "adjunct to the process of protecting the interests of [the respondent's]

former clients" pursuant to Practice Book § 2-64. Specifically, the court stated that "State Farm *wishes* to pay the [disputed funds] to the trustee," that "the Skuras *ask to intervene* to make a claim on [those funds]," and that "[t]he court *grants the requests*." (Emphasis added.) State Farm and the Skuras thus joined the underlying matter by way of permissive intervention. Accordingly, because the Skuras and State Farm did not, as the respondent claims, intervene as of right, the respondent's claim misstates the applicable law.[17] "Cases involving permissive intervention . . . do not involve standing or aggrievement but whether a trial court abused its discretion in [allowing or] failing to allow intervention." *In re Ryan V.*, 46 Conn. App. 69, 72 n.6, 698 A.2d 371 (1997); see also *Franco* v. *East Shore Development, Inc.*, 271 Conn. 623, 630, 858 A.2d 703 (2004) ("[T]here is no requirement that a prospective intervenor, in its motion to intervene, assert the *same* claim as the plaintiff in the original action. . . . The whole point of intervention is to allow the participation of persons with interests distinct from those of the original parties; it is therefore to be expected that an intervenor's standing will have a somewhat different basis from that of the original plaintiffs." (Emphasis in

---

[17] We note that the respondent further argues that State Farm and the Skuras lacked standing to invoke the jurisdiction of the court through intervention because they were neither statutorily nor classically aggrieved. In so arguing, the respondent relies on *D'Attilo* v. *Statewide Grievance Committee*, 329 Conn. 624, 188 A.3d 727 (2018), in which our Supreme Court affirmed the trial court's judgment of dismissal for lack of standing where the plaintiffs sought to invoke the jurisdiction of the trial court by way of a writ of mandamus challenging the Statewide Grievance Committee's dismissal of their grievance complaints against several attorneys. Id., 631–33. Because the issue in *D'Attilo* was whether the plaintiffs had a *legal right* to judicial intervention for purposes of *overturning* the disciplinary decisions of a grievance body, it is inapposite to the present case, in which the court granted third parties permissive intervention in disbarment proceedings for the purpose of protecting the interests of a disbarred attorney's clients pursuant to Practice Book § 2-64.

original; internal quotation marks omitted.)). Accordingly, "[p]ermissive intervention, which is entrusted to the trial court's discretion, depends on a balancing of factors, and the court's determination will only be disturbed for an abuse of discretion." *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 290–91, 497 A.2d 780 (1985).

"In deciding whether to grant a request for permissive intervention, a trial court should consider: the timeliness of the intervention; the [prospective] intervenor's interest in the controversy; the adequacy of representation of such interests by other parties; the delay in the proceedings or other prejudice to the existing parties the intervention may cause; and the necessity for or value of the intervention in resolving the controversy." (Internal quotation marks omitted.) *Austin-Casares* v. *Safeco Ins. Co. of America*, 310 Conn. 640, 664, 81 A.3d 200 (2013).

In light of the relevant factors that guide a trial court's decision with respect to permissive intervention, and, in turn, our determination of whether the court abused its discretion, it is helpful to first clarify the nature of the controversy that was before the court. Contrary to the respondent's claim, although the underlying disciplinary proceedings against her were initiated under General Statutes § 51-84 and Practice Book § 2-45, the court's jurisdiction was not limited exclusively to determining what discipline should be imposed on the respondent. "The proceeding to disbar [or suspend] an attorney is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 238, 558 A.2d 986 (1989). Once disciplinary proceedings are initiated, however, "the court controls the situation

and procedure, in its discretion, as the interests of justice may seem to it to require." (Internal quotation marks omitted.) Id., 238–39. "There are three possible sources for the authority of courts to sanction counsel . . . . These are inherent power, statutory power, and the power conferred by published rules of the court. . . . That power may be expressly recognized by rule or statute but it exists independently of either and arises because of the control that must necessarily be vested in courts in order for them to be able to manage their own affairs so as to achieve an orderly and expeditious disposition of cases." (Citations omitted; internal quotation marks omitted.) *In re Presnick*, 19 Conn. App. 340, 347, 563 A.2d 299, cert. denied, 213 Conn. 801, 567 A.2d 833 (1989). In such proceedings, "[t]he power of the courts is left unfettered to act as situations, as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Rozbicki*, supra, 239.

The court, in setting forth procedures related to the disbarment order and in appointing Boni-Vendola as trustee, expressly stated that it was exercising its jurisdiction under Practice Book § 2-64, which required the court to appoint a trustee to "inventory the files of the [the respondent] and to take such action as seems indicated to protect the interests of the [respondent's] clients."[18] Our rules of practice thus expressly provided the court with jurisdiction over the respondent's client files for the purpose of protecting the interests of her clients, and, moreover, pursuant to the court's inherent authority, it had "unfettered [power] to act as situations,

---

[18] Although the respondent summarily asserts that the court "mistakenly relie[d] on Practice Book § 2-64 as a basis for jurisdiction" over the underlying proceedings, she fails to set forth any legal basis to support this claim. (Footnote omitted.)

as they may arise, may seem to require" to achieve that purpose. (Internal quotation marks omitted.) See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 239.

With this context in mind, we consider whether the court abused its discretion in granting the Skuras' and State Farm's motions for permissive intervention. We begin with the first factor, timeliness. "[T]here are no absolute ways to measure timeliness . . . ." (Internal quotation marks omitted.) *Austin-Casares* v. *Safeco Ins. Co. of America*, supra, 310 Conn. 649. "Although the point to which the suit has progressed is one factor in the determination of timeliness, it is not solely dispositive. Timeliness is to be determined from all the circumstances." (Internal quotation marks omitted.) Id., 651. The court, while attempting to satisfy its mandate to protect the interests of the respondent's clients, learned that the Skuras were claiming an interest in funds related to matters in which the respondent represented them. Under such circumstances, we conclude that intervention was timely in that the sole underlying purpose was to assist the court with resolving a controversy presently before it—namely, whether the Skuras had an interest in the respondent's funds. With respect to the remaining factors, the Skuras, former clients of the respondent claiming interest in funds related to her representation, had a clear interest in the controversy. State Farm, as it indicated in its motion to intervene, also had an interest in the controversy by virtue of its possession of those disputed funds in that it "require[d] advice and direction [from the court] as to the proper distribution of the funds." Additionally, the intervenors' interests were not likely to be adequately represented by the existing parties where the respondent was maintaining a separate, ongoing action against State Farm and the respondent's claim to the disputed funds was

in direct conflict with the Skuras' claim to the funds.[19] We further conclude that the intervention was likely to expedite, rather than delay, the resolution of the underlying proceedings. At the time the motions to intervene were filed, the interests of the respondent's clients had remained unresolved for nearly seventeen months. Significantly, during the June 23, 2023 hearing on the motions to intervene, the court largely attributed the delay in the underlying proceedings to the respondent's lack of cooperation and expressly stated that its reason for directing the Skuras and State Farm to intervene was because the court was "trying now to move as quickly as [it could]" to wind up the respondent's practice.[20] Finally, the necessity and value of the intervention is apparent because the resolution of the

---

[19] We further note that, although Boni-Vendola's role as trustee was to protect the interests of the respondent's clients, the Skuras' interest in the disputed funds was premised on the respondent's alleged misconduct during her representation on their behalf in a previous matter unrelated to the underlying proceedings. Accordingly, Boni-Vendola's ability to adequately represent their interests likely would have been limited because she had no direct involvement in the circumstances underlying the Skuras' claimed interest.

[20] The court's concerns with the respondent's compliance with its orders actually dated back to early 2022. As stated herein, on April 27, 2022, the court held the respondent in contempt for her failure to comply with its January 28, 2022 order, and, on May 17, 2022, the court executed a capias for the respondent for her continued failure to comply with its order.

With respect to the Skuras' claims specifically, the court, on December 22, 2022, denied the respondent's November 7, 2022 motion requesting, inter alia, that it order State Farm to release the disputed funds directly to her, stating: "When the court disbarred [the respondent] it set up a process to account for what she is owed and what she owes her clients. [The respondent] has not cooperated with that process thus frustrating attempts to know what she may be owed. . . . The court can't grant her motion when her right to the money is either disputed or unknown."

Additionally, during the June 23, 2023 hearing on the motions to intervene, the court expressly attributed the lack of resolution to the respondent's failure to comply with court orders, stating that "the process of trying to find out who [the Skuras] were and what claim [they] might have was difficult because [the court] hadn't gotten access to documents that were subpoenaed by the court and that had been requested and that there was a long process to discover that [the Skuras] even existed."

Skuras' fee dispute was necessary before the court could completely determine the controversy before it— that is, the proper distribution of the respondent's funds so as to protect the interests of her former clients, which included the Skuras.

Accordingly, we conclude that the court did not abuse its discretion in granting permissive intervention to the Skuras and State Farm in the postdisbarment action.

## II

The respondent next claims that the trial court lacked subject matter jurisdiction to resolve the fee disputes raised by the Skuras and by Moen.[21] Specifically, the respondent argues that, because neither General Statutes § 51-84 nor Practice Book §§ 2-45 and 2-64 authorize the court to "award a remedy [or] consider the rights, interests, or benefits" of Moen or the Skuras, the court lacked subject matter jurisdiction over their claims.[22] We disagree.

We begin by setting forth the relevant legal principles. "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to

[21] With respect to Moen, the respondent appeals only from the court's August 16, 2023 decision ordering the trustee to disburse to Moen the remaining balance of the respondent's IOLTA account in the amount of $34,601.20. The respondent did not appeal from the court's July 13, 2022 order granting disciplinary counsel's motion to disburse to Moen $101,470.13, which represented the remaining balance of Moen's settlement funds. During oral argument before this court, the respondent clarified that she is challenging the court's subject matter jurisdiction to disburse funds to Moen only to the extent that the funds came from the respondent's earned attorney's fees from prior, unrelated matters rather than from Moen's settlement proceeds.

[22] On appeal, the respondent challenges the court's disbursement decision only on the ground that the court lacked subject matter jurisdiction. She does not challenge the merits of the decision, nor does she challenge the court's factual findings.

entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . [I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 442–43, 797 A.2d 1081 (2002). "The issue of subject matter jurisdiction is a question of law over which our review is plenary." *Chief Disciplinary Counsel* v. *Rozbicki*, 150 Conn. App. 472, 480, 91 A.3d 932, cert. denied, 314 Conn. 931, 102 A.3d 83 (2014).

The respondent's arguments in support of this claim are belied by the relevant statutes and rules of practice. In particular, she asserts that "[t]here is absolutely no language in [Practice Book] § 2-64 authorizing the court to award a remedy nor [to] consider the rights, interests or benefits of an individual." As stated previously, § 2-64 not only authorizes the court to consider the rights and interests of a disbarred attorney's clients but it expressly requires the court to inventory such rights and interests and to appoint a trustee authorized to take any actions necessary for the protection thereof. The language of § 2-64 thus plainly conferred subject matter jurisdiction on the court over the rights, interests, and benefits of the Skuras and Moen as former clients of the respondent.

Again, "it bears emphasizing that attorney disciplinary proceedings are sui generis, that it is the exclusive duty of the Judicial Branch to regulate attorneys . . . ." *Disciplinary Counsel* v. *Hickey*, 328 Conn. 688, 702, 182 A.3d 1180 (2018). Once initiated, "the court controls the situation and procedure, in its discretion, as the interests of justice may seem to it to require. . . . [T]he power of the courts is left unfettered to act as situations,

as they may arise, may seem to require, for efficient discipline of misconduct and the purging of the bar from the taint of unfit membership. Such statutes [and rules of practice] as ours are not restrictive of the inherent powers which reside in courts to inquire into the conduct of their own officers, and to discipline them for misconduct." (Internal quotation marks omitted.) *Burton* v. *Mottolese*, 267 Conn. 1, 26, 835 A.2d 998 (2003), cert. denied, 541 U.S. 1073, 124 S. Ct. 2422, 158 L. Ed. 2d 983 (2004).

With respect to the Skuras, because their claimed interest to the respondent's attorney's fees implicated the court's subject matter jurisdiction under Practice Book § 2-64, we conclude that the court, notwithstanding the respondent's ongoing declaratory judgment action, had subject matter jurisdiction to resolve the dispute within the disbarment proceedings pursuant to its inherent powers. Specifically, the inherent power of courts to manage their dockets is well established, particularly when, as we conclude here, such action is related to preventing undue delays.[23] See, e.g., *Miller* v. *Appellate Court*, 320 Conn. 759, 771, 136 A.3d 1198 (2016) (courts have inherent power "to manage [their] dockets and cases . . . to prevent undue delays in the disposition of pending cases" (internal quotation marks omitted)); see also *Disciplinary Counsel* v. *Hickey*, supra, 328 Conn. 704–705 (concluding that, although applicable rule of practice did not specify procedural vehicle for raising claim that attorney is ineligible to apply for reinstatement, trial court had authority to entertain motion to dismiss application for reinstatement pursuant to "inherent power to craft procedures by which it may entertain threshold issues in order to avoid unnecessary delays and to conserve judicial resources").

---

[23] See footnote 20 of this opinion.

With respect to Moen, it is clear to us, and the respondent does not challenge, that Practice Book § 2-64 provided the court with subject matter jurisdiction over the funds arising from Moen's personal injury settlement.[24] Notably, the court found that Moen never received her full interest in settlement proceeds because the respondent "decided to take for herself . . . $78,000 [of Moen's money]." Moreover, the court concluded that the respondent had no legal right to that money and, accordingly, that "Moen has a legal right to be paid $78,000 by [the respondent]." Under such circumstances, we conclude that the court's subject matter jurisdiction extends to the respondent's earned legal fees arising from separate matters, namely, by way of its "unfettered" inherent power "to act as situations, as they arise, may seem to require" to protect Moen's interests. See *Statewide Grievance Committee* v. *Rozbicki*, supra, 211 Conn. 239.

Because we affirm the judgment of the trial court ordering the respondent's funds to be disbursed to her former clients, the appeal from the court's dismissal of the respondent's declaratory judgment action regarding a portion of those funds is moot.[25] "It is a [well settled] general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual

[24] We note that, although the respondent herself asked the court to determine distribution of the funds collected from Lettick by way of her motion for immediate disbursement of such funds, her motion advanced the same jurisdictional arguments she raises on appeal. Specifically, she argued that disciplinary counsel and the trustee, in collecting the funds, had "unilaterally engag[ed] in actions beyond any authority of [the] court and absent any authority by statute or . . . the rules of practice," and, accordingly, requested that the court immediately distribute the funds to her on the basis that the court had no authority to withhold such funds and, therefore, lacked subject matter jurisdiction to resolve any dispute to the funds.

[25] Because we affirm the disbursement decision of the trial court in AC 46813, the respondent's appeal from that judgment in AC 46890 is also moot.

relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *M&T Bank* v. *Lewis*, 349 Conn. 9, 20, 312 A.3d 1040 (2024).

The judgment in AC 46813 is affirmed; the appeal in AC 46890 is dismissed.

In this opinion the other judges concurred.